(114 N. W. 478.)

---

THE STATE OF NORTH DAKOTA EX REL. VINCENT BOCKMEIER, V. FRED L. ELY, SHERIFF OF PIERCE COUNTY.

Opinion filed Nov. 7, 1907.

**Judges — De Facto Officers — Validity of Acts.**

1. A person acting and recognized by the public as judge of the district court of a county in a new district, before the law establishing such new district has become operative, by appointment of the governor, under the erroneous belief that the new district was already in existence, is judge de facto, and his acts in that capacity valid as to third persons and the public.

**Same.**

2. Laws were passed defining the boundaries of the Ninth judicial district and increasing the number of judicial districts from 8 to 10. These laws took effect March 23, and July 1, 1907, respectively; but, by reason of conflicting provisions therein, the date when the new district should come into existence could not be ascertained from the face of the laws. The governor construed them as creating the new district on the 1st day of July, 1907, and appointed a judge thereof, who duly qualified and entered upon the discharge of the duties of judge of such district on or about July 1, 1907, in good faith, and the judges of the Second and Eighth districts ceased to perform judicial duties in the counties which will compose the Ninth district. From an inspection of that part of the journals of the legislative assembly showing the proceedings on the passage of these laws, this court has determined that the intent of that body was that the new laws creating the new district and defining its boundaries should be held in abeyance until the election and qualification of a judge as therein provided. *Held,* that the person so appointed judge, and acting and recognized as such, was a judge de facto, and his official acts valid.

**Habeas Corpus — Conviction Under De Facto Judge.**

3. On application for writ of habeas corpus by a person convicted and sentenced at a term of court held by such appointee, and now imprisoned under the judgment rendered therein, *held,* that relief cannot be granted and the application must be denied.

Application by the state, on the relation of Vincent Bockmeier, for a writ of habeas corpus to Fred L. Ely, sheriff of Pierce county.

Writ ·denied.

*A. M. Christianson* and *Edward Engerud,* for relator.
*Scott Rex* and *E. A. Coger* and *Purcell & Divet,* for respondent.

SPALDING, J.   This is an application on behalf of the relator for a writ of habeas corpus to release him from imprisonment under conviction for a criminal offense in the district court of Pierce county in August last, while Hon. A. G. Burr was acting and presiding as judge of such court.  The facts are stipulated, and it is stipulated that the matter be disposed of upon petition for writ of habeas corpus, and that, if on the hearing this court shall determine that the petitioner is entitled to his release, the writ shall issue forthwith, and that, if this court shall determine otherwise, then its denial of such writ shall be taken as final in this proceeding.

The petition, among other things, alleges the organization and existence of the counties of McHenry, Pierce and Bottineau; that the relator is a resident of the county of Pierce, which is a part of the Second judicial district; and ·that one John F. Cowan is the duly elected, qualified and acting judge of said Second judicial district.   It also sets forth the passage of an act of the legislature defining the boundaries of the Second, Eighth and Ninth judicial districts of the state of North Dakota, which was approved on the 23d day of March, 1907, and also of an act dividing the state into ten judicial districts, approved on the same day, the former taking effect March 23, and the latter July 1, 1907, and that on or about the 1st day of July, 1907, the governor of the state of North Dakota appointed A. G. Burr judge of the pretended Ninth judicial district, and isued to him a commission as judge in due form, and that thereafter, and on or about the 1st day of July, 1907, said Burr qualified as judge of said pretended Ninth judicial district, and since such appointment and qualification has performed the functions of district judge within said Ninth judicial district, and is now acting as such.

In the case of State of North Dakota ex rel. Henry Erickson, plaintiff, v. A. G. Burr, defendant (N. D.) 113 N. W. 705, a direct proceeding to oust the defendant from such office, decided at this

term, we have held that the appointment of said Burr to the office of judge of the Ninth judicial district was illegal, for the reason that such district does not come into existence until the judge elected at the general election in 1908 qualifies. The only question to be determined in this proceeding is whether said Burr was, at the time of the conviction and pronouncing of judgment upon this relator, judge de facto. It is assumed that, if he was a de facto judge at such time, his official acts in that capacity are valid as to third persons and the public. Having quoted the two acts of the legislature in question in full in the former opinion, it is unnecessary to do so here.

The books are full of cases attempting to define a de facto officer; but it is generally conceded that no precise definition can be given fitting all cases, and that each case must be determined largely upon its own facts. We have carefully examined a great number of authorities on this subject, and, as to the reason for courts holding officers illegally in possession of an office officers de facto, and their acts valid, find that the statement of this doctrine most generally accepted is contained in Plymouth v. Painter, 17 Conn. 585, 44 Am. Dec. 574, where the court says: "The principle established in these cases in regard to the proceedings of officers de facto, acting under color of title, is one founded in policy and convenience, is most salutary in its operation, and is, indeed, necessary for the protection of the rights of individuals and the security of the public peace. The rights of no person claiming title or interest under or through the proceedings of an officer having an apparent authority to act would be safe if he were obliged to examine the legality of the title of such officer up to its original source, and the title or interest of such person were held to be invalidated by any accidental defect or failure in the appointment, election or qualification of such officer, or in the rights of those from whom his election or appointment emanated. Nor could the supremacy of the laws be maintained, or their execution enforced, if the acts of the officers having a colorable but not a legal, title, were to be deemed invalid. If the act of the justice issuing a warrant is to be invalid on the ground of the objection there made, all persons who would act in the execution of the warrant would act without authority. The constable who arrests and the jailer who receives a felon would be each a trespasser. Resistance to them would be lawful. Everything done

by either of them would be unlawful, and the constable or the persons aiding him might in some possible instance become amenable even to a charge of murder for acting under an authority which they reasonably considered themselves bound to obey, and the invalidity whereof they were wholly ignorant." So it is held in all but three or four courts of this country that the acts of a de facto officer are valid as to third persons and the public, and by "third persons" is meant those persons having business of an official character with such officer, and not third persons in the usual legal sense in which the term is used. This court has already followed the rule of the great majority in holding that there can be a de facto officer whose official acts will be valid. Cleveland v. McCanna, 7 N. D. 455, 75 N. W. 908, 41 L. R. A. 852, 66 Am. St. Rep. 670.

The leading American case on the subject of de facto officers, containing a definition of that officer which has been almost universally acepted as the most accurate and comprehensive of any given, is State v. Carroll, 38 Conn. 449, 9 Am. Rep. 409, and in the opinion in that case the authorities are reviewed. Chief Justice Butler · furnishes a definition which he says is sufficiently accurate and comprehensive to cover the whole ground. He says: "An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised: First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known or valid appointment or election, but where the officer has failed to conform to some precedent requirement or condition, as to take an oath, give a bond or the like; third, under color of a known appointment or election, void, because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public; fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such." The Supreme Court of North Carolina, in People v. Staton, 73 N. C. 546, 21 Am. Rep. 479, defines a de facto

officer as one who goes in under color of authority or who exercises the duties of the office so long or under such circumstances as to raise a presumption of his right.

One of the earliest definitions was given by Lord Ellenborough, as "one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." It seems to have originally been held that there must be color of title for the appointment; but Throop, in his work on Public Officers, at section 626, says that the more recent decisions recognize a broader rule, and tend to hold that actual possession of the office, without regard to the mode in which possession was acquired, unless, perhaps, where it was by forcible usurpation, suffices to constitute the incumbent an officer de facto, and he collates the cases conflicting with the doctrine that color of title is needed at page 589 of that work, and maintains that it is color of authority, instead of color of title, which distinguishes a de facto officer from a mere intruder, and says that color of title is a very different thing from color of authority, and that the former expression implies that the person must be in by virtue of an election or appointment which is at least colorable. We are disposed to think that the terms "color of title" and "color of authority" have been used in most cases without discrimination or distinction. McCrary on Elections, section 253, defines "color of authority" as authority derived from an election or appointment, however irregular or informal, so that the incumbent is not a mere volunteer. If color of authority, as used and defined, is all that is necessary, Mr. Burr clearly had color of authority, because he possessed a commission as judge of the Ninth judicial district, issued in due form by the governor of the state of North Dakota, the authority which, if there had been a Ninth judicial district legally in existence and a vacancy in the office of judge of that district, would have had the appointment of a person to fill the vacancy. If color of title to the office is necessary, we think, under the definitions of color of title, he was an officer de facto. Color of title to the office is defined in Re Ah Lee (D. C.) 5 Fed. 899, as analogous to color of title to land, and Judge Deady says, in the opinion in that case, which is exhaustive: "The latter does not mean a good title, or even a defective conveyance from one having a title, but only the appearance of title; that is, a deed to the premises in due form of law."

It would be a useless task to attempt to collate the vast array of authorities on this question, or even to discriminate between those which conflict. We shall therefore content ourselves with citing a few which appear to run on lines nearly parallel with this case. Nearly all of the courts of the different states have held that an appointment to office under an unconstitutional law makes the appointee an officer de facto, until he is ousted by quo warranto proceedings, or the law is adjudged unconstitutional. Am. & Eng. Enc. Law, vol. 8, p. 793, note 6; Throop on Public Officers, p. 602. We are at somewhat of a loss to distinguish in principle between a case where the law under which an officer was appointed was unconstitutional and void, and one where, as in this case, the law was honestly misconstrued by the governor, the appointing power, and his appointee performed the functions of the office before the law creating the district went into operation. The acts of the legislature were so carelessly drawn, and the various sections so conflicting, that on the face of them any officer may well have been justified in construing them as immediately creating a district, and we are not certain that it was the duty of the governor to go behind the face of the law. We are of the opinion that on the face of these laws, under ordinary rules of construction regarding statutes containing conflicting provisions, when construed together, they might properly have been held to bring a district immediately into existence on their taking effect; but, as will be noted from an examination of the opinion in the quo warranto proceedings, we went to the journals of the senate and house to ascertain the intent of the legislature in the premises, and only from an inspection of the proceedings of that body were we able to arrive at this intent. If a commission issued by a person who under certain circumstances would have the right to issue it constitutes color of authority or right, then the commission held by Burr must be color of authority or right, because it was in legal form, and issued by the official having authority to appoint under certain circumstances.

It is held by several authorities that one who is in possession of an office, and claiming under color of appointment thereto, may be an officer de facto, when such office can only be lawfully filled by election, and the officer filling the office, which can only be legally filled by appointment, may be an officer de facto, though elected. Chicago, etc., R. R. Co. v. Langlade County, 56 Wis. 614.

14 N. W. 844; In re Ah Lee (D. C.) 5 Fed. 899, 16 Sawy. (U. S.) 410; Goodwin v. Perkins, 39 Vt. 598.

It is held that an officer in possession of an office, although appointed by a body without authority to make the appintment, is an officer de facto. In Brown v. O'Connell, 36 Conn. 432, 4 Am. Rep. 89, a person appointed judge by the common council of a city under a law providing for the appointment being made by that body was a judge de facto, although the constitution required the judges of all courts to be appointed by the general assembly. In Ray v. Murdock, 36 Miss. 692, the court held a person commissioner de facto who had received his appointment from a board which had power under certain circumstances to appoint a commissioner, and which had made this appointment when those circumstances did not exist.

In McLean v. State, 8 Heisk. (Tenn.) 22, tax assessors appointed by the board of county commissioners, although such appointments could only be made by the county court, were held to be de facto officers. 8 Am. & Eng. Enc. Law, p. 729, note 1.

Brady v. Howe, 50 Miss. 607, is a strong authority. The governor appointed a person to the office of judge, who entered upon the exercise of the duties of the office. Although the governor had no legal authority to make the appointment, for the reason that the office was filled by one whom the governor had no power to remove, it was held that the appointee of the governor was an officer de facto.

In Smith v. Lynch, 29 Ohio St. 261, we find a case where a village council passed an ordinance establishing a board of health, and appointed members of the board; but the ordinance establishing the board was not legally passed, and was therefore void, and it was held that such officers, on accepting office, became de facto officers, and their acts as such binding and valid.

In Nichols v. MacLean, 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730, it was held that the appointee of the mayor to the office of police commissioner of the city of New York, when no vacancy existed in the office, was an officer de facto.

In Diggs v. State, 49 Ala. 311, the court held that a solicitor pro tem., appointed by the circuit court when there was no vacancy, and who accepted the appointment, was a county officer de facto. See this case for collection of authorities holding a vacancy not necessary to create a person acting under color of authority a de facto officer.

In People v. Roberts, 6 Cal. 214, the court held that a sheriff appointed by a judge of the county court, admitting such appointment to be void, was a de facto officer, and his acts good.

In State v. Bloom, 17 Wis. 521, it was held that, if a party is convicted and sentenced at a term of court held by a person exercising the office of judge of such court under appointment of the governor and without authority of law, there being no person entitled to exercise said office, the sentence is nevertheless valid and binding as against collateral attack by habeas corpus.

In Merchants' National Bank v. McKinney, 2 S. D. 106, 48 N. W. 841, the Supreme Court of that state had before it a question as to the validtiy of the acts of county commissioners and their appointees. The law provided for the organization of a county containing fifty or more legal voters. The governor acted in good faith on a petition containing the names of nonresidents, when in fact there were not more than twenty legal voters in the county, and he appointed commissioners, who in turn appointed county officers, and it was held that they were all de facto officers, and that their acts were binding and valid as to the public and third parties.

In re Ah Lee (D. C.) 5 Fed. 899, is an important case. The opinion is by Judge Deady. The constitution of Oregon authorized the legislature to provide by election for separate judges of the Supreme Court and circuit courts, when the population of the state should equal 200,000. In 1880 the legislature passed an act providing for the election of such judges at the general election in June, 1880, and that the governor should appoint such judges in the meantime, which was done. It was admitted that the population was not 200,000, and that such act was unconstitutional, and the appointments by the governor invalid. The constitution authorized the selection of such judges by election, and Judge Deady held that the judges acting under such appointments were judges de facto, and in the course of his opinion says: "A person actually in office by color of right or title, not a mere usurper or intruder, although not legally appointed or elected thereto, or qualified to hold the same, is still an officer de facto."

The legislature of Massachusetts created a new county and the officers thereof, and the governor appointed such officers before the law went into effect; and in Fowler v. Bebee, 9 Mass. 231, 6 Am. Dec. 62, it was held that the persons appointed were de facto of-

ficers, although the appointments were afterward declared void by the same court. To the same effect, see Com. v. Fowler, 10 Mass. 291.

In McGraw v. Williams, 33 Grat. (Va.) 510, a person elected as judge and commissioned as such entered upon the duties of the office in the belief that his term commenced immediately, and he was held to be a de facto officer, notwithstanding that his term did not legally commence until a considerable later date, and his predecessor's term had not expired.

In re Boyle, 9 Wis. 264, the validity of the acts of a municipal court was in question. At the time of the election of the judge and clerk of that court, the law establishing such court was not in effect; but the officers so elected entered upon the discharge of their duties as if the law had been in force, and it was held that they were officers de facto. In re Burke, 76 Wis. 357, 45 N. W. 24, was a case where the legislature passed an act establishing a municipal court of the city and county of Ashland, and provided that the judge of said court should be elected the first Tuesday of the April following, and to hold office from the first Monday in January thereafter. On the day designated the judge was elected, and two days later the same person was appointed by the governor to hold office until the first Monday in January following. It was held that after the appointment was made until the first Monday of January following the judge was a judge de facto.

In Carleton v. People, 10 Mich. 250, we find a case where a new county was created, and the act of the legislature creating it provided for an election before the taking effect of the law. The election was held at the time designated, and the county officers elected immediately qualified and assumed the duties of their respective offices, and it was held that, where there are offices, all that is required to make officers de facto is that the individual claiming office be in possession of it, performing its duties, and claiming to be such officer under color of election or appointment as the case might be.

It was held that when the legislature passed an act changing the boundaries of a judicial circuit but did not increase the number of circuits, and therefore did not increase the number of judges, and that portion of such law that provided for the election of the circuit judges was not authorized by the constitution, and the election itself was void, it gave the judge so elected and acting under

his election color of office, and that his acts while so acting were valid, although there was another judge in the office at the same time.    People v. Bangs, 24 Ill. 184.

The legislature of Alabama created a judicial circuit and the office of judge thereof by an unconstitutional and void statute, but independently of the statute there was in a certain county a circuit court for that county and a circuit judge.  The judge commissioned by the governor under the void statute attempted to exercise the duties of the office of circuit judge of the county in question, and it was held that he was an officer de facto, and his acts valid.    State v. Judge of Eigth Judicial Cricuit, 142 Ala. 87, 38 South. 835, 110 Am. St. Rep. 20.    See, also, to same effect, Walker v. State, 142 Ala. 7, 39 South. 242.

Turney, Administrator, v. Dibrell, 62 Tenn. 235, is a case which seems to us directly parallel to the case at bar.  The question involved was the validity of the appointment of Dibrell as clerk and master of the chancery court at Sparta, and the regularity of certain proceedings.  It appears that in 1870 one Ward was elected chancellor, and that his election was contested, and pending the contest the governor of the state assumed that a vacancy existed, and commissioned one Goodpasture as chancellor, and he assumed the duties and the functions of the office, and appointed Dibrell clerk and master.  The validity of the appointment of Dibrell as clerk and master depended upon the legality of the appointment of Goodpasture as chancellor.  The court held that, if Goodpasture was chancellor de jure or de facto, he might rightfully make the appointment of a clerk and master.  It was insisted that no vacancy existed, the contested election not leaving a vacancy in contemplation of the law, which authorized the governor to make the appointment, and this was admitted.  But, notwithstanding these facts, the court held the appointee of the governor was chancellor de facto, and his acts as such were valid, for the reason that the governor had the power to appoint a chancellor in certain contingencies, and, if he appointed upon the assumption of the existence of the circumstances which authorized the act, his appointee took the office under color of title, and his acts were valid as an officer de facto, or as one exercising the functions of the office under the forms of law and color of title, and this notwithstanding the fact that the former chancellor held over.

It is strenuously argued that there could be no judge de facto in this instance because there was no office—that there was no Ninth judicial district. There was the office of judge of the district court, and this office was created by the constitution, and this is all that was necessary to put into operation the rules of law applicable to de facto judges, if the circumstances were such, aside from this, as to make those rules applicable. Several of the cases cited above are to the effect that officials, who have been appointed or elected and have gone into office before the law creating the office or district went into effect, were nevertheless de facto officers, and their acts as such were valid. In this case the law creating ten districts went into effect July 1, 1907, and the law defining boundaries of the Ninth district March 23, 1907; but they were not to go into operation, as we have held in the other case, until after the election of a judge in 1908 and his qualification. We think the principles applied in the similar cases, supra, are applicable here; and, as we have before stated, we see no distinction in principle between the case at bar and the many cases where the acts of an officer holding under an unconstitutional act of the legislature have been held valid.

But after careful consideration we are of the opinion that from another and different standpoint there was an office which this appointee filled. The constitution provides for courts to be presided over by a judge elected by the voters of a number of counties, called a "district." The word "district" is used to distinguish this class of courts from the supreme and other classes of courts, and likewise to designate the territory over whose courts the particular judge shall preside. In each district there may be a number of counties, and in no district are there less than two. It requires no act of the legislature providing for a new judge where the number of districts is increased. On an increase in districts being made, the number of judges is automatically increased to correspond. People v. Dubois, 23 Ill. 547; People v. Bangs, 24 Ill. 184. The judge does not alone constitute the court. It takes, not only the judge, but also the subordinate officials and all the machinery, to make a court. The courts are county—not district —affairs. All the officials, except the judge, are elected by the county, and the county furnishes all the machinery. The state pays the salary and the expenses of the judge, but the county pays the other expenses, and the judge, while presiding in a designated

county, is presiding over the court of that county, and not of the district. A county in one district has no more relation to another county in the same district than it has to any other county in some other district, except that it helps to elect the same judge.

Pierce county, although legally a part of the Second judicial district, had a court of its own, and any judge presiding at a term of that court was presiding over the district court of Pierce county. The governor had the power to appoint under certain circumstances. He misjudged as to the existence of the circumstances. The judges of the Second and Eighth districts, from parts of which the Ninth was to be created, misjudged the same circumstances in the same way, and surrendered possession of the office of judge of the district court in the three counties composing the new district, and that office was unfilled, except as occupied by Burr. To this office Burr was appointed, and, after qualifying, assumed the duties. To the public he was judge of the courts of those counties, and possessed all the indicia of office. All parties concerned acted in good faith, and the public acted in good faith in recognizing him as the officer he claimed to be and believed he was. All the reasons given in Plymouth v. Painter, supra, for courts recognizing the existence of an officer de facto exist in this case. Criminals have been tried and sentenced, civil actions have been tried and judgments entered, expenses incurred by individuals and counties, he has performed the marriage ceremony, and, if his acts are void as those of an intruder or usurper, innumerable complications, hardships and public injury will result. The whole doctrine of de facto officers is intended to avoid these things. If any doubt exists as to the legality of his acts, the public—the party most interested—is entitled to the benefit of those doubts. We are of the opinion that there was an office, that he filled it under color of authority, and that his official acts as to third persons and the public are valid.

The application is denied. All concur.