(121 N. W. 64.)

---

THE STATE OF NORTH DAKOTA v. CHARLEY BEDNAR.

Opinion filed May 27, 1909.

**Judges — De Facto — Right to Question Authority.**

1. Following the rule announced in State v. Ely, 16 N. D. 569, 113, N. W. 711, 14 L. R. A. (N. S.) 638. *Held,* that Hon. A. G. Burr, who presided as judge at the trial of the issues in a criminal action against appellant, was at the date of such trial a de facto judge of the district court in and for Pierce county, and as such his acts are not subject to attack by a private suitor.

**Indictment and Information — Prosecution in the Name and by the Authority of the State.**

2. An information which is entitled in the name of the state of North Dakota, and in which the parties are designated as "State of North Dakota, Plaintiff, v. Charley Bednar, Defendant," sufficiently conforms to section 97, article 1, of the state constitution, which requires that "all prosecutions shall be carried on in the name and by the authority of the state of North Dakota," especially where, as in the case at bar, such information recites that the "state's attorney in and for Pierce county, in the state of North Dakota, as informant, here in open court, in the name and by the authority of the state, gives this court to understand and be informed." State v. Kerr, 3 N. D. 523, 58 N. W. 27, followed.

**Indictment and Information — Assault With Intent to Kill — Inclusion of Lesser in Higher Offense.**

3. Appellant was charged with the crime of shooting at another with a firearm with intent to kill, and the jury found him guilty of assault with a dangerous weapon by shooting at the complaining witness with a firearm with intent to injure him.

*Held,* that the crime of which he was charged is included within that charged in the information.

Appeal from District Court, Pierce county, BURR, J.

Charley Bednar was convicted of an assault with a dangerous weapon, and he appeals.

Affirmed.

*A. M. Christianson* and *L. N. Torson* (*L. J. Palda, Jr.,* of counsel), for appellant. *Andrew Miller* Atty. Gen., and *Alfred Zuger,* Asst. Atty. Gen., and *B. L. Shuman,* State's Atty., for the State.

FISK, J. Appellant was convicted of the crime of assault with a dangerous weapon. He assigns numerous errors but we will notice those only which are discussed in the brief.

The first assignment challenges the rulings of the trial court in overruling his objections to the jurisdiction of that court; the point of such objections being that the Honorable A. G. Burr, who presided at such trial, was not even a de facto judge of such court, and hence all his acts are nullities. Appellant's brief is almost entirely devoted to this assignment in an attempt to convince us that the decision of this court in State v. Ely, 16 N. D. 569, 113 N. W. 711, 14 L. R. A. (N. S.) 638, involving the same questions was erroneous. Such contention deserves but brief notice, as the same is wholly devoid of merit. We entertain no doubt as to the correctness of the decision in State v. Ely, notwithstanding the decisions of some courts to the contrary. But, aside from this, a conclusive answer to appellant's contention is the fact that he cannot raise such question in the manner attempted. Counsel are evidently laboring under an erroneous view of the law. By the objections they sought to raise the question of Judge Burr's authority to preside. They sought to question his official character as judge. This they could not do for the obvious reason, among others, that Judge Burr had no jurisdiction to pass on his own qualifications. Whether in fact or in law he was judge of the district court he could not determine. Moreover, it would, indeed, be a strange rule of law that would permit every

party to a lawsuit to volunteer to become a champion of the public rights by challenging the official right of the judge to act. Such is not the law. The judge of the Second judicial district, which embraced Pierce county, having ceased to act in such county, and the Honorable A. G. Burr in good faith, under color and claim of right, having assumed to act, he became and was a de facto judge, as was held in the Ely case, and, being such de facto officer he was as to all persons, except the public, a de jure judge. Coyle v. The Commonwealth 104 Pa. St. 117. In that case the defendant was convicted of murder in the oyer and terminer court of Adams county. A special plea was attempted to be interposed to the jurisdiction of the the court upon the ground that a certain act of the legislature approved April 9, 1874 (P. L. 54), attempting to create Adams county a separate judicial district, and providing for the election of a judge therein, was unconstitutional and void for the reason that such county did not contain the required population under the Constitution of said commonwealth. A demurrer to such special plea was sustained, and in disposing of the question the court, among other things, said: "The question sought to be raised by the prisoner's special plea to the jurisdiction is not properly before us. The rightful authority of a judge in the full exercise of his public judicial functions cannot be questioned by any merely private suitor, nor by any other, excepting in the form especially provided by law. A judge de facto assumes the exercise of a part of the prerogative of sovereignty, and the legality of that assumption is open to the attack by the sovereign power alone. If the question may be raised by one private suitor, it may be raised by all, and the administration of justice would, under such circumstances, prove a failure. It is not denied that Judge McLean was a judge de facto and, if so, he is a judge de jure as to all parties except the commonwealth. The attorney general representing the sovereignty of the state by a writ of quo warranto might properly present this constitutional question for our consideration, but it cannot come before us from any other source, or in any other form." The court held that such special plea to the jurisdiction could not in any event have availed the prisoner, even to raise the question intended thereby to be raised. See, also, 23 Cyc. 621, and numerous cases cited, among which are the following: State v. Williams, 61 Kan. 739, 60 Pac. 1050; People v. Gobles, 67 Mich. 475, 35 N. W. 91; Coyle v. Sherwood, 1 Hun. (N. Y.) 272; In re Burke, 76 Wis. 357, 45 N. W. 24; Manning v. Weeks, 139

U. S. 504, 11 Sup. Ct. 624, 35 L. Ed. 264; Commonwealth v. Taber, 123 Mass. 253; Hamilton v. State, 40 Tex. Cr. R. 464, 51 S. W. 217; State v. Brown, 12 Minn. 538 (Gil 448); People v. Dillon (Sess.) 26 N. Y. Supp. 778. We quote from the opinion in the last case as follows: "We are at a loss to understand how upon a trial before a court * * * the defendant can raise the question as to the regularity of the official bond of the presiding magistrate here suggested. It would be somewhat extraordinary for a judicial officer gravely to take evidence regarding the validity of his own title to the office which he fills, and to then determine * * * whether or not he was qualified to act. The embarrassment which would result from such a procedure is so apparent as to make comment or citation of authority unnecessary. If, in fact, the justice is not legally qualified, the law affords an adequate and speedy method of ousting him from the office which he usurps; but our system of jurisprudence hardly goes to the extent of authorizing a proceeding so abounding with possibilities for making the administration of justice ridiculous as to permit him to act as a judge in determining whether or not he is one." That such rule has for its foundation a wise and sound public policy must be apparent to all, for in its absence intolerable confusion would inevitably result.

The next assignment challenges the sufficiency of the information on the ground that it was presented in the name and by the authority of the "state," instead of in the name and by the authority of the "State of North Dakota," as required by section 97, art. 1, of the state constitution. This objection is hypercritical. It clearly and unmistakably appears from the information that the prosecution was carried on in the name and by the authority of the state of North Dakota. The title, as well as other parts of the information, discloses such to be true. State v. Kerr, 3 N. D. 523, 58 N. W. 27, directly sustains such an information as against the same kind of an attack.

It is next contended that the crime of which appellant was convicted is not embraced within the crime charged in the information. State v. Mattison, 13 N. D. 391, 100 N. W. 1091, and State v. Cruikshank, 13 N. D. 337, 100 N. W. 697, are relied on in support of such contention. If the verdict was as the printed abstract gives it, we would be required to sustain this contention under the prior decisions of this court above mentioned. But an examination of the original record on file discloses that a very material portion of the

verdict was in some manner omitted in abstracting the record. The verdict is in strict accord with the rule announced in such prior decisions, and hence was such a verdict as the jury had a right to return. It is as follows, omitting the title: "We, the jury in the above-entitled action, find the defendant, Charley Bednar, guilty of the crime of assault, with a dangerous weapon, by shooting at Frank Horack with a firearm with intent to injure him, although without intent to kill or to commit a felony, and without justifiable or excusable cause, as charged in the information. Theodore Dokken, foreman." We have examined the instructions complained of. and find no error therein. The record discloses that appellant was accorded a fair trial, and, finding no error in the record, the judgment is affirmed.

All concur, except MORGAN, C. J., not participating.