STATE OF NORTH DAKOTA EX REL. HENRY J. LINDE, Attorney General, Rep. Relator, v. JAMES E. ROBINSON, R. H. Grace, L. E. Birdzell, Chas. J. Fisk, E. B. Goss, and E. T. Burke.

(160 N. W. 512.)

**Supreme court — prerogative jurisdiction — questions involved — publici juris — sovereignty of state — franchises — prerogatives — liberties of its people.**

1. The prerogative jurisdiction of the supreme court will be exercised only in cases wherein the questions involved are *publici juris* and the sovereignty of the state or its franchises or prerogatives or the liberties of its people are affected.

Supreme court — members thereof — majority of — general election — successful candidates — controversy — public interest — sovereign rights of state — original jurisdiction — exercise of.

2. A controversy between a majority of the present members of the supreme court and certain successful candidates at the last general election who claim the right to occupy such offices and exercise the duties thereof, presented to this court by the petition of the attorney general, is a matter of such public interest and involves the sovereign rights of the state and its people in a degree sufficient to require the exercise of such original jurisdiction.

District court — judge of — called to sit — supreme court judge — in place of — becomes supreme court justice — for all purposes in case — power — authority.

3. A judge of the district court who is called in to sit in the place of a judge of the supreme court becomes a justice of the supreme court for all purposes in the case in which he is so called, and is invested with the same power and authority conferred upon a justice of the supreme court.

Opinion filed December 7, 1916.

Application for an original writ by Henry J. Linde, Attorney General.

An order is issued citing the respondents to show cause why the writ should not be issued.

PER CURIAM.

The attorney general presented to this court his verified petition in due form wherein it is asserted that the three above-named respondents, Robinson, Grace, and Birdzell, were candidates, and received a majority of all votes cast at the general election held in November, 1916, for the offices of justices of the supreme court of the state of North Dakota, and consequently were chosen and elected as justices of the supreme court to succeed in term Chief Justice C. J. Fisk, and Associate Justices E. T. Burke and E. B. Goss, whose terms commenced on the first Monday in January, 1911, and will expire January 2, 1917; that the above-named respondents, Robinson, Grace, and Birdzell, assert that their terms of office commence on December 4, 1916, and that they threaten and are about to intrude themselves into, and without warrant of law assume, the offices of justices of the supreme court; that they have declared their intention to so do, among other ways, in a written com-

munication to the present Chief Justice Fisk; and that they will, unless restrained from so doing, intrude themselves into, and attempt to occupy, said offices and perform the duties thereof, as well as enter into possession of the offices in the State Capitol now occupied as chambers by Chief Justice Fisk and Associate Justices Burke and Goss, respectively.

The petition also sets forth at great length the important causes (including criminal cases) now pending before said court; the uncertainty which will exist respecting the validity of the judgments and orders of the court, and in general the condition of chaos which will exist under the circumstances, unless some orderly determination be made of the rights of the respective contenders. The attorney general, therefore, asks that this court assume original jurisdiction and determine the matters thus presented.

Upon the presentation of this petition to the court it became immediately apparent that the present Chief Justice, C. J. Fisk, and Associate Justices Burke and Goss, were disqualified, as it involved directly their tenure of office and their right to occupy their respective positions and receive compensation for their services during the month of December, 1916; said three members of this court therefore announced their disqualification. The two remaining justices, Bruce and Christianson, thereupon, under the provisions of § 100 of the state Constitution, called three district judges; to-wit, W. L. Nuessle, Judge of the Sixth Judicial District, J. M. Hanley, Judge of the Twelfth Judicial District, and Chas. A. Pollock, Judge of the Third Judicial District, to sit with said Justices Bruce and Christianson upon the hearing of said application. The said district judges so called thereafter met at the court rooms of the court in the State Capitol with Associate Justices Bruce and Christianson, and the court was organized, consisting of A. A. Bruce, Acting Chief Justice, Associate Justice A. M. Christianson, and District Judges, Nuessle, Hanley, and Pollock.

The first question presented to this court as thus organized is whether this court should exercise its original jurisdiction. The original jurisdiction of this court, which is granted by § 87 of the state Constitution, is reserved for the use of the state itself when it appears to be necessary to vindicate or protect its prerogatives or franchises or the liberties of its people. "The state uses it to punish or prevent wrongs to itself or

to the whole people; the state is always the plaintiff, and the only plaintiff, whether the action be brought by the attorney general, or, against his consent, on the relation of a private individual under the permission and direction of the court." State ex rel. Bolens v. Frear, 148 Wis. 456, 500, L.R.A.1915B, 569, 134 N. W. 673, Ann. Cas. 1913A, 1147; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.—, —, 156 N. W. 561.

In State ex rel. Erickson v. Burr, 16 N. D. 581, 113 N. W. 705, this court held that this jurisdiction must be exercised upon the application of a private relator even though the attorney general refuses to consent to the initiation of the proceeding, where a person was appointed by the governor as judge of the district court under a law which provided that such judge should be elected. As already stated, the attorney general refused to institute proceedings, but this court permitted the private relator to file an application, and assumed original jurisdiction, and, upon a hearing, held the appointment to be invalid and ousted the alleged incumbent. In a companion case—State ex rel. Bockmeier v. Ely, 16 N. D. 569, 14 L.R.A.(N.S.) 638, 113 N. W. 711—this court held the acts of the then incumbent to be valid on the ground that he was a *de facto* judge of the district court. If, under these circumstances, the court was required to assume original jurisdiction of the controversy there presented, it is self-evident that in this case, where the proceeding is instituted by the chief law officer of the state and involves the incumbency of the offices of a majority of the members of this court, a far stronger case is presented and far greater reasons exist for assuming original jurisdiction. Consequently, four members of the court as now constituted, namely, Associate Justices Bruce and Christianson, and District Judges Nuessle and Pollock, are of the opinion that this court ought to exercise its original jurisdiction herein, and issue an order citing the respondents to show cause why the original writ of this court should not be issued as prayed for.

Judge Hanley concurs herein, but bases his concurrence on the ground that in this controversy, between two contending courts, a tribunal should be constituted and offered to the contending parties, to settle their differences, to the end that no unseemly controversy be had between the judges as to who has the right to hold the offices involved during the month of December, 1916.

As it appears to the court that C. J. Fisk, E. T. Burke, and E. B. Goss, the present members of this court, are interested in the determination of the questions presented by the attorney general's petition, and threfore are proper parties to this proceeding, it is ordered that they be interpleaded as parties respondent herein. The court therefore directs the issuance of an order citing the respondents to show cause herein why this court should not c..ter judgment determining the title to said offices of justices of the supreme court, and issue its peremptory original writ confirming the title to said offices in the three respondents who shall be found legally entitled thereto.

As it appears that the determination on the merits of this controversy may affect the tenure of office of Associate Justices Bruce and Christianson, they signify their desires to be relieved from participating in a hearing of the merits of the controversy, if they can be permitted to be so relieved. "It is now a universally recognized principle that a person cannot be a judge of his own cause, and any interest in the subject-matter of a suit will disqualify a judge to preside on the trial thereof. Authority to preside in his own cause cannot be conferred by positive enactment. And however broad the grant of judicial power may be, this rule remains operative, and gives rise to a tacit exception from the general words of the grant. But jurisdiction may be conferred where the interest is not direct, but remote; is not certain and palpable, but contingent and problematical; is not great and important, but minute." 23 Cyc. 576.

The celebrated jurist, Judge Cooley (Cooley, Const. Lim. pages 592, 593), says: "No one ought to be a judge in his own cause; and so inflexible and so manifestly just is this rule, that Lord Coke has laid it down that 'even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void in itself; for *jura naturæ sunt immutabilia,* and they are *leges legum.'*

"This maxim applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise. It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation; and when his own rights are in question, he has no authority to determine the cause. . . . Accordingly, where the lord chancellor, who was a shareholder

in a company in whose favor the vice-chancellor had rendered a decree, affirmed this decree, the House of Lords reversed the decree on this ground, Lord Campbell observing: 'It is of the last importance that the maxim that "no man is to be a judge in his own cause" should be held sacred. And that is not to be confined to a cause in which he is a party, but applies to a cause in which he has an interest.' 'We have again and again set aside proceedings in inferior tribunals, because an individual who had an interest in a cause took a part in the decision. And it will have a most salutary effect on these tribunals when it is known that this high court of last resort, in a case in which the Lord Chancellor of England had an interest, considered that his decree was on that account a decree not according to law, and was set aside. *This will be a lesson to all inferior tribunals to take care, and not only that in their decrees they are not influenced by their personal interest, but to avoid the appearance of laboring under such an influence.*'"

That the interest of Justices Bruce and Christianson is not so direct as to disqualify them from participating in the merits of this controversy is supported by very high authority. See Re Duncan, 139 U. S. 449, 35 L. ed. 219, 11 Sup. Ct. Rep. 573, 23 Cyc. 579.

But in this state the justices of this court have refrained from sitting (even though not legally disqualified) in causes wherein it might appear that they had any interest whatever. Thus in many states trial judges subsequently elected members of appellate courts are permitted to, and do, sit in review upon their own judgments. 23 Cyc. 588, 589. This, however, has never been done in North Dakota. This court has constantly recognized not only the duty of rendering righteous and honest judgments; it has also recognized that "next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." People ex rel. Roe v. Suffolk, 18 Wend. 550.

This declaration has met with the approval of many American courts. See Conant's Appeal, 102 Me. 477, 120 Am. St. Rep. 512, 67 Atl. 564. Consequently, while Justices Bruce and Christianson are not legally disqualified from participating in a hearing and determination of the merits of this controversy, it is the unanimous opinion of the entire court, as now constituted, that, in order to comply with

the highest principles of the ethics of the bench, they should be excused from so participating, if they can be legally permitted to do so.

The three district judges participating in this decision were called in under the provisions of § 100 of the state Constitution, which reads: "In case a judge of the supreme court shall be in any way interested in a cause brought before said court, the remaining judges of said court shall call one of the district judges to sit with them on the hearing of said cause."

It will be observed that this constitutional provision was enacted for the sole purpose of providing for the calling in of a district judge to sit in place of any justice of the supreme court who might for any reason be deemed disqualified. In other states having no such constitutional provision, the members of the supreme court have sometimes felt impelled to act in cases wherein they were all directly interested in the controversy. Self-evidently, a condition of that kind is unfortunate, and the framers of our Constitution wisely provided against its occurrence. Very few states have similar constitutional provisions. Its purpose was obviously to preclude the necessity of any controversy presented to the North Dakota supreme court being determined by a court any member of which had an interest in its determination.

In the Constitutional Convention it was first proposed to provide against this contingency by the following provision: "Whenever all or a majority of the judges of the supreme court shall from any cause be disqualified from sitting in any case in said court, the governor shall, with the advice and consent of a majority of the senators elected, assign judges of the district court not disqualified in the manner aforesaid, who shall sit in such case in place of such disqualified judges, with all the powers and duties of judges of the supreme court." See page 97, Journal Constitutional Convention. The provision thus proposed was not adopted, but § 100 of the present Constitution adopted in its stead.

The question, therefore, arises, Can a majority or all of the members of the court consist of district judges? We think it can.

In the early history of the state, the court was required to place its interpretation upon this section of the Constitution, in the case of Northern P. R. Co. v. Barnes, 2 N. D. 310, 51 N. W. 386. Two members of the supreme court, as then constituted, were disqualified, and two district judges were called in to sit in the places of the judges so

disqualified. The decision of the court in that case was promulgated by the two district judges, with the then Chief Justice Corliss, dissenting from the conclusions reached by the district judges, who constituted a majority of the court.

In the case at bar, therefore, the court, as now constituted, consisting of three district judges and two justices of the supreme court, the three district judges constitute a majority and clearly are justices of the supreme court of this state for the purposes of the present controversy, and they are invested with the same power and authority as, and their judgment is entitled to the same force and effect as that of, the justices regularly elected members of the court. Consequently, even though Bruce and Christianson do not participate in the hearing of the present controversy on its merits, the three district judges will constitute a quorum of the court as now constituted, and as such are empowered to transact business under the provisions of § 89 of the Constitution as amended by article 10 of the Amendments thereto.

Therefore, we have decided that Justices Bruce and Christianson ought to be relieved from participating in the hearing of the merits of this controversy unless the contending parties insist upon their participation, and that two additional district judges ought to be called in to sit as members of this court for the purpose of such hearing and determination.