## G. D. Snow v. The State.

No. 19119.   Delivered November 24, 1937.
Rehearing denied March 30, 1938.

The opinion states the case.

*L. D. Johnston* and *H. R. Stovall,* both of Waxahachie, and *Bennett & Bennett,* of Normangee, for appellant.

*F. G. Swanson,* of Tyler, amicus curiae.

*Dan Moody* and *Charles L. Black,* both of Austin, amici curiae.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is burglary; the punishment, confinement in the penitentiary for two years.

The place of business of the Gulf Refining Company in Ennis, Texas, was burglarized on the night of September 25, 1936, and twenty-two cases of lubricating oil taken therefrom and set on the platform just outside the building. The entrance was made by breaking a lock on the front door. Immediately after the house had been entered officers went to the scene and found an automobile nearby bearing license No. F-63-311. Also there was a trailer attached to the car. Appellant came out of a cotton patch pulling up his trousers. He stated to the officers he had gone into the cotton patch to answer a call of nature. Further he said that he had gotten lost and had turned off the highway up the dirt road toward the burglarized building; that, in trying to turn his car around, he got stuck in the mud. One of the officers testified that when they approached the burglarized building some one came "running down the cotton rows from the door of the warehouse." This party was identified as being appellant. Appellant was arrested in Houston. A search of his automobile disclosed that he had a license plate in the car, bearing No. 399-002. An effort had been made by some one to burglarize the place of business of the Gulf Refining Company two or three nights before. At that time an officer approached and some one fled in an automobile bearing license No. 399-002. Shortly after the burglary fingerprints were taken from the cases of lubricating oil found on the platform. After appellant was arrested his fingerprints were taken and they corresponded exactly with the prints taken from the cases of oil. Shortly after his arrest appellant made a written statement in which he said that he was not in Ennis on the occasion of the burglary. However, upon the trial appellant admitted that he was near the burglarized building at the time the officers approached. He denied, however, that he had entered the building and taken the lubricating oil.

We are unable to agree with appellant's contention that the evidence is insufficient. While fingerprints may not be conclusive as to the identity of an individual, as stated by this Court in Davis v. State, 66 S. W. (2d) 343, in the present case note is to be taken of the additional circumstances proved by the State, and which we have hereinbefore set forth. In its entirety,

we think the evidence is sufficient to meet the requirement of the law of circumstantial evidence.

There is no merit in appellant's contention that the court should have instructed the jury that the State relied solely upon circumstantial evidence. The court gave a correct and adequate charge on the subject of circumstantial evidence.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant seeks to raise and have this Court determine the question of the eligibility of Judge Harry N. Graves to hold the office of Judge of the Court of Criminal Appeals of Texas.

We know actually and judicially, (a) that in consequence of the death of the late Judge O. S. Lattimore a vacancy occurred in the office of Judge of this Court; (b) that in discharging the duty imposed upon him by the Constitution (Article 5, Sec. 4), the Governor appointed Judge Graves to fill the vacancy; (c) that Judge Graves holds a commission from the Governor evidencing his appointment to the office; (d) that he has taken the official oath and is now engaged in discharging the duties of said office; (e) that Judge Graves was a member of the House of Representatives of the 45th Legislature of the State, (f) that the Legislature of which Judge Graves was a member passed a law which raised the salaries of Judges of the appellate courts, including the Judges of the Court of Criminal Appeals, (g) that the term for which Judge Graves was elected to said 45th Legislature does not expire until the 2d Tuesday in January, 1939; (h) that Article 3, Section 18, of the State Constitution provides in part as follows: "No Senator or Representative shall, during the term for which he may be elected, be eligible to any civil office of profit under this State, which shall have been created, or the emoluments of which may have been increased during such term."

It is upon the provision of the Constitution last above quoted that appellant bases his contention that Judge Graves is ineligible to hold the office, the duties of which he is now discharging.

The importance of the matter presents a strong appeal for the expression of our views upon the merits of the question, but if this Court is without power to determine the eligibility of Judge Graves any expression thereon would not amount to an adjudication of the question, and we have no disposition to attempt the exercise of a jurisdiction which we do not have. This same idea evidently prompted the statement from Judge DAVIDSON found in Marta et al. v. State, 81 Texas Crim. Rep. 135, 193 S. W. 323. In that case appellant attempted in a motion for rehearing to raise a question on the right of Judge Harper to function as a Judge of this Court, the claim being that he had by his acts vacated the office. Judge DAVIDSON dissented on affirmance of the judgment, but regarding the attack upon Judge Harper said: "I believe from hurried review of the motion of appellants to disqualify Judge Harper from sitting in this motion for rehearing that as a member of this Court I am not authorized to decide that matter. Any conclusion I might reach or decide I could not enforce by judicial order or mandate. This Court as a court can not try one of its members for breach of duty, or supposed breach of duty."

It is certain that the present effort to raise the question of eligibility of Judge Graves by appellant in his motion for rehearing is a collateral and not a direct attack. The holding of the courts is quite uniform in all jurisdictions that such a question may not be raised collaterally. It is not necessary, however, to go beyond our own courts.

"It is settled law that the right of a judge to the office in which he functions may not be attacked collaterally." 25 Tex. Jur. 245; Lowe v. State, 83 Texas Crim. Rep. 134, 201 S. W. 986; Marta v. State, 81 Texas Crim. Rep. 135, 193 S. W. 323; Germany v. State, 3 S. W. (2d) 798; Hamilton v. State, 51 S. W. 217; Ex parte Tracey, 93 S. W. 538; Hagler v. State, 116 Texas Crim. Rep. 552, 31 S. W. (2d) 653; Bennett v. State, 78 Texas Crim. Rep. 231, 181 S. W. 197; Ex parte Call, 2 Texas Ct. App. 500. In the case last cited, after reviewing many authorities, Judge WHITE said: "It is a general rule that the title of an incumbent of a judicial office can not be impeached collaterally and indirectly, and that, while he is in possession of the office, discharging its ordinary functions, his official acts are conclusive as to all parties interested * * *. The result from all the authorities seems to be that, in matters which concern the public, the officer's title to his office (he being in the exercise of its duties) can not be questioned unless in a direct proceeding having for its object the contestation of his right to hold the office."

In Germany v. State (supra), quoting from Ex parte Tracey (supra), "The whole doctrine of de facto officer is founded upon policy and necessity, in order to protect the public and individuals, where they may become involved in the official acts of persons discharging the duties of an office, without being lawful officers."

Upon the subject of collateral attacks we cite the following cases from our own appellate civil courts, which are in accord with the decisions of our own Court. Aulanier v. Governor, 1 Texas 653; City of Christine v. Johnson, 255 S. W. 629; Broach v. Garth, 50 S. W. 594; Williams v. Castleman, 112 Texas 193, 247 S. W. 263. In the opinion in the case last cited the Supreme Court said: "While the purpose of the suit was in reality to determine appellant's right to the office involved, as well as the actual existence of the office, appellee made no claim to the office occupied by appellant. Such being the state of the case, if appellant was ineligible, the exclusive remedy to prevent his usurpation or unlawful occupancy of the office was by quo warranto."

The decisions of the Supreme Court of the United States are in accord with the rulings of the Texas courts. See Ex parte Ward, 173 U. S. 452, 43 L. Ed. 765; McDowell v. U. S., 159 U. S. 596; Ball v. U. S., 140 U. S. 118. In Ex parte Ward it appears that Ward having been tried and convicted in the court presided over by Judge Edward R. Meek, challenged the judgment by habeas corpus on the ground that Judge Meek's appointment to the office was invalid, in that he had been appointed by the President while the Senate was in session and his appointment had not been confirmed. After reviewing the decisions, the court said: "The result of the authorities is that the title of a person acting with color of authority, even if he be not a good officer in point of law, can not be collaterally attacked, and as Judge Meek acted, at least, under such color, we can not enter on any discussion of propositions involving his title to the office he held."

As reflecting the holdings of the courts in the various jurisdictions over the United States we copy the following excerpt from 33 C. J., pages 932 and 933, Sections 13 and 14, omitting those parts which seem inapplicable: "The judiciary are invested with authority to try and determine the right of a judge to office. Such an inquiry is not a political, but a judicial, question. In the absence of some special statutory provision this right can be questioned only by the State; and it can not be tested in a collateral proceeding. Quo warranto is the proper

proceeding in which to test a judge's right to his office. * * * A judge de facto is a judge de jure as to all parties except the State, and his official acts, before he is ousted from office, are binding on third persons and the public. His right to hold his office can be questioned only in proceedings, regularly instituted for that purpose, to which he is a party, in the form provided by law; it can not be attacked in a collateral proceeding. * * * The rules apply, although the person acting as judge is incapable of holding the office, and irrespective of the question whether he was properly elected, * * *." Many authorities will be found collated in the footnotes supporting the text, including a quotation from State v. Bednar, 18 N. D. 484, 121 N. W. 614, as follows: "That such rule [the rule of the text] has for its foundation a wise and sound public policy. must be apparent to all, for in its absence intolerable confusion would inevitably result."

Judge Graves is unquestionably holding the office of a Judge of this Court under color of title by appointment and is discharging the duties of such office. The only way in which his title to the office may be determined is a direct proceeding instituted for that purpose in a court of competent jurisdiction. If some one else was asserting title to the office such party by a direct suit against Judge Graves could raise the question. McAllen v. Rhodes, 65 Texas 348. The only other method is by direct quo warranto proceedings. In no event can a de jure judge, or a de facto judge claiming the office by color of appointment, and actually performing the duties of such officer, be ousted, or his official acts successfully challenged except in a direct proceeding to which he is a party. Such a proceeding could not be filed in this Court originally, and could not be brought to this Court by appeal because such an action would be a civil proceeding to test the right of the incumbent to hold a civil office of which this Court has no jurisdiction. Article 5, Section 5, of the Constitution fixes the jurisdiction of said Court as follows: "The Court of Criminal Appeals shall have appellate jurisdiction coextensive with the limits of the State in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law."

Appellant appears to take the position that if Judge Graves is in fact ineligible as a Judge of this Court that all acts of the court would be void. He asks that his motion for rehearing be granted, or a decision of the matter held in "abeyance until such time as this Court shall have been reorganized and consist of three Constitutionally eligible members." Section 4 of Article 5 of the Constitution provides that: "The Court of Criminal

Appeals shall consist of three Judges, any two of whom shall constitute a quorum, and the concurrence of two Judges shall be necessary to a decision of said court."

If the Governor for some reason had refrained from appointing anyone to the vacancy caused by the death of Judge Lattimore, the two remaining Judges could have functioned unless they had disagreed in some case. There has been no disagreement in appellant's case, and in no event has he been injured by the presence of Judge Graves upon the Court. Long v. State, 59 Texas Crim. Rep. 103.

The motion for rehearing is overruled.

MORROW, PRESIDING JUDGE.—I concur in the opinion of Judge HAWKINS.

HAWKINS, JUDGE.—Judge GRAVES did not participate in deciding the motion for rehearing.