**GREAT NORTHERN RAILWAY COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Mabel FLATEN, as County Treasurer of Grand Forks County, North Dakota, and her successor in office, Defendant-Appellee.**

**Civ. No. 9013.**

Supreme Court of North Dakota.

Dec. 30, 1974.

Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, for plaintiff-appellant.

Shaft, Shaft, McConn & Fisher, and Thomas B. Jelliff, State's Atty., Grand Forks, for defendant-appellee.

JOHNSON, Judge, on reassignment.

This case raises issues relating to the statutory authority of park districts to levy real estate taxes in excess of the ordinary limits. The appellant, Great Northern Rail-

way Company, has, since the commencement of this action, consummated a corporate merger and is presently known as Burlington Northern, Inc. We will refer to the appellant hereinafter as the taxpayer. The case below was largely handled by stipulation between the parties and involves taxes paid under protest for the year 1967 in the amount of $313.71. Also incident to this action are taxes paid under protest for all other years between 1961 and 1970. The statute in question was amended in 1971 and subsequent years are not in issue. The Grand Forks County District Court upheld the validity of the excess levy of the Grand Forks Park District.

The taxpayer contends that the Grand Forks Park District's excess levy was invalid for the years in question on three grounds:

(1) Section 57–15–12(3) of the North Dakota Century Code (the then North Dakota Revised Code of 1943)[1] required an annual election for excess levies by park districts.

(2) The excess levy election of the Grand Forks Park District, as held on April 2, 1956, did not provide authorization for an excess levy beyond one year.

(3) The excess levy election was void because the ballot failed to state the specific dollar amount of money raised by such taxes.

■ We may examine grounds 1 and 2 together as their impact is similar. The basic park district real estate tax limit was, and remains, at four mills on each dollar of assessed valuation within the district. Section 57–15–12(1), N.D.C.C. However, there was authority for excess tax levies under Section 57–1512(3), Revised Code of 1943, 1953 Supp.:

"Whenever the board of park commissioners deem it advisable to raise moneys by taxes in excess of the levy herein provided, for any purposes for which the park district is authorized to expend moneys raised by taxes, such board of park commissioners may increase the levy as herein provided in any amount not to exceed ten (10) mills on the dollar of the net taxable assessed valuation of the district when authorized by a majority of the qualified electors of the park district voting at any regular election in which the question has been submitted."

As of 1971, this section was amended by addition of the following language:

"Such excess levy may be continued from year to year by action of the park board except that if a petition containing the signatures of not less than ten percent of the electors of the park district, as determined by the city auditor of the municipality in which the park district is situated, is presented to the park board requesting an election on the question of continuing the excess levy, such question shall be submitted to the electors of the park district at the next regular park district election. If the majority of the voters at such election determine not to continue the excess levy, no further excess levy shall be made except that such election shall not affect the tax levy in the calendar year in which the election is held." Chapter 541, 1971 Session Laws.

The ballots submitted to the Grand Forks Park District voters on April 2, 1956, read:

"To vote mark an X in the ☐ after the question Shall the Park District of the City of Grand·Forks increase the levy from the amount now produced by 4 mills on the dollar of the net taxable assessed valuation of the Park District to an amount that will be produced by 8 mills on the dollar of the net taxable assessed valuation of the Park District for the current year?

Yes ☐

No ☐ "

This question was carried by a majority of the participating voters. There were no

1. Because of the date of the election in question here, references herein will be to

applicable portions of the North Dakota Revised Code of 1943.

subsequent elections regarding the excess levy, but the park district board continued to budget and levy taxes based upon an eight mill limit.

■■■ We hold that the election was effective to authorize an excess levy for one year only. While we would ordinarily ignore minor irregularities and defects in tax proceedings, there are too many problems with this tax levy to stamp it with our approval. We are dealing here with an "excess levy", a tax authority granted to a local unit of government which is beyond that tax authority deemed necessary for ordinary circumstances by the Legislature. In dealing with similar problems in the past, this court has noted that:

> "It appears to us that the great care taken by the Legislature to give the electors a complete picture of the effect of an excess levy upon the tax structure of the district indicates that it did not look upon excess levies with favor and intended that they should be approved only if absolutely necessary." Great Northern Railway Co. v. Severson, 78 N.D. 610, 50 N.W.2d 889, 892 (1952).

The statute itself makes no reference to the effective period for such excess taxing authority. The language does appear to indicate that the board is to make a judgment as to need based upon programs and objectives for the immediate future. The statutes authorizing excess levies for other governmental units—school districts, cities, counties—provided without exception for a specific term during which the excess levy was authorized. See §§ 57–1604 and 57–1702, Revised Code of 1943. See also, § 57–15–20.1, N.D.C.C. (adopted 1971). Such authority is ordinarily limited to a period of

from one to five years. The best that can be said of this statute is that it contains an ambiguity on the question of the term for which the excess levy is authorized. Where legislative intention is doubtful with respect to the meaning of the statutes granting taxing authority, the doubt must be resolved against the government and in favor of the taxpayer. See Goldberg v. Gray, 70 N.D. 663, 297 N.W. 124 (1941); Great Northern Railway Co. v. Severson, *supra*; Standard Oil Co. of Indiana v. State Tax Com'r, 71 N.D. 146, 299 N.W. 447 (1941).[2] The power to impose taxes should not be extended beyond the clear meaning of the statutes.

■■■ The park district argues that the election authorized an excess levy for the indefinite future. Under their interpretation of the statute the voters approved giving the park district increased tax authority for as long as the board wished to exercise it. It does not appear that a reasonably well-informed voter would necessarily draw such a conclusion from the ballot. The ballot question makes no specific mention of an effective term for such authority. The ballot question ends with the phrase, "for the current year." Counsel for the taxpayer argues that the ballot question relates only to the "current year." We need not go so far, but may conclude that the voter was not being presented with a clear indication that his vote would approve excess levies for the indefinite future.[3] This is particularly true where excess levy elections for other governmental units would ordinarily be for fixed, short-term periods. A proper concern for protecting the ballot requires that the voter be informed as to the choice being made, or, at

---

**2.** This was also the conclusion reached by the Attorney General of North Dakota in an opinion dated November 3, 1961. The statute in question was found to require an election for each year of the excess levy.

**3.** The ballot question may be compared with the suggested form of ballot under Section 57–16–06, N.D.C.C., relating to school district excess levy elections.

"Shall ———— school district levy taxes for the year (or years) ————, which shall exceed the legal limit by ———— percent, so that the taxes levied for this current year instead of being ———— dollars, which is the limit authorized by law, shall be ———— dollars:

Yes ☐

No ☐ "

an absolute minimum, that he not be misinformed by the official ballot. Insofar as the ballot may be unintelligible, the electoral process is subverted.

■ There is an alternate ground upon which the excess levies are questioned in this case. This contention would affect all years of the excess levy. While the section of the Code relating to excess levies for park districts (Section 57–1512) says nothing regarding the duration of the excess levy authority, there is another provision in the general chapter regarding park districts. Section 40–4918, Revised Code of 1943, provides:

"Except as otherwise provided in this chapter, the board of park commissioners and its officers and the park district shall be governed, in the issuing of warrants and certificates of indebtedness and *in the levying of any tax* or special assessment, *or in carrying out, enforcing, or making effective any of the powers granted in this chapter,* by the provisions of the laws of this state applicable to municipalities of the kind in which the park district is established." [Emphasis added.]

Within the chapter on municipalities are two code provisions which relate to this problem. Section 57–1703 governs excess levy elections for municipalities, providing in part:

"The notice of election, in addition to the usual requirements of a notice of election, shall contain a statement of the question to be voted upon pursuant to the terms of this chapter, and also shall show the total amount of income and expenditures of the taxing district for the fiscal year immediately preceding, the estimated expenditures *for the year for which the taxes are to be levied,* the aggregate amount of the tax levy which the tax levying board seeks authority to make, the aggregate amount of the tax levy permissible without special authority from the electors, and the amount of tax levy in excess of the statutory limit which

the board seeks authority to make." [Emphasis added.]

Section 57–1704, Revised Code of 1943, relates to the form of ballot in such municipal elections. The ballot question is to be substantially in the following form:

"Shall ———— (naming the taxing district) levy taxes for the year ———— (naming the current year) which shall exceed the legal limit by ———— dollars, so that the taxes levied instead of being ———— dollars, which is the limit authorized by law, shall be ———— dollars?

Yes ☐
No ☐ ”

It is argued that the one-year limit contemplated by the statutes is applicable to park districts under Section 40–4918, Revised Code of 1943. This was the position taken by at least one district court in similar circumstances. See Great Northern Railway Co. v. Esterby (Ward County District Court, 5th Judicial District, Nov. 5, 1969). It is further argued that the form of ballot is governed by these sections and the ballot question submitted in the Grand Forks Park District election is contrary to the statutes rendering the election invalid. We do not agree with these contentions.

Section 40–4918, Revised Code of 1943, by its terms, relates to "levying of any tax or special assessment" or to powers granted under Chapter 40–49, Revised Code of 1943. Neither of these situations applies to the park district election to authorize an excess levy. Such an election is governed by Chapter 57–15, not Chapter 40–49. Though the terms are sometimes loosely and erroneously used, levying of the tax is a function of the governing body, the park district board. The act of the voters in such an election is merely to authorize an increase in the taxing authority of the board. The excess levy election is not governed by Chapter 40–49 nor is it the "levying of any tax or special assessment." Upon the same analysis, the requirement of Section 57–1501 that taxes be "levied or voted in spe-

cific amounts of money" relates to the action of the board and not to the action of the voters in authorizing excess levies.

It should also be noted that Section 57–1512(3), as amended in 1957, indicates the form of the question to be submitted to the voters—" * * * [T]he question of increasing the levy by a certain number of mills, but not to exceed ten mills, on the dollar of the net assessed valuation of the district * * *."

While we do not find the park district excess levy election to be governed by these sections, they do indicate a legislative effort to conform park district proceedings to those applicable for municipalities. This concern is consistent with our holding that such an election authorized an excess levy for one year only.

■ Lest it be concluded that this opinion authorizes wholesale tax refunds, we note that refunds for the years in question are limited to those who have made appropriate and timely application for tax abatement. Such an application must be filed with the county auditor on or before the first day of November in the year the tax becomes delinquent. § 57–23–03, N.D.C.C. [R.C.1943, § 57–2303].

The judgment of the district court is reversed and remanded.

ERICKSTAD, C. J., and PAULSON and VOGEL, JJ., concur.

KNUDSON, Judge (concurring specially).

I agree with the result reached by the majority in finding that the levy is not a continuing levy, and, if properly authorized by the election was effective for one year only.

However, I am of the opinion that the question of the excess levy was not properly submitted to the electors for the reason that the increase was stated in terms of mills instead of in terms of amounts of money or in terms of specified dollars as required by Sections 57–17–03 and 57–17–04, N.D.C.C., as made applicable to park districts by Sections 57–15–01 and 40–49–18, N.D.C.C.

In the case of all written laws it is the intent of the lawgiver that is to be enforced, but this intent is to be found in the instrument itself. The whole instrument is to be examined. Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import, may yet be made plain by comparison with other clauses or portions of the same law. It is therefore a very proper rule of construction that the whole is to be examined with a view to arriving at the true intention of each part. The rule is that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory. State v. Robinson, 35 N.D. 410, 160 N.W. 512, 516 (1916).

As I would hold the excess levy invalid for the reason that the issue was not properly submitted to the electors, it would not be necessary to consider the question whether the excess levy was perpetual.