### G. E. COMEGYS v. THE STATE.

#### No. 719.    Decided May 3, 1911.

**1.—Assault to Murder—Charge of Court—Self-Defense—Force.**

Where, upon trial of assault to murder, the evidence showed that defendant either made an unprovoked assault on the party injured, or that the latter was advancing on him with a drawn pistol, it was reversible error in the court's charge to instruct the jury that the defendant was justified in using all necessary force to protect his life or person, etc., especially where the defendant requested a proper charge thereon.

**2.—Same—Evidence—Irrelevant Testimony.**

Where, upon trial of assault to murder, it appeared that the trouble grew out of certain family relations between defendant and deceased, it was error to permit the State to introduce testimony as to whether or not defendant called upon the wife of the deceased some two or three years prior to the difficulty, as such circumstances would not tend to show the state of defendant's mind at the time of the homicide.

**3.—Same—Evidence—Other Offenses.**

Upon trial of assault with intent to murder it was improper to permit the State to show that defendant had pleaded guilty to carrying a pistol on the occasion he shot at the prosecutor and to permit State's counsel to discuss this testimony.

**4.—Same—Charge of Court—Reasonable Doubt—Weight of Evidence.**

Upon trial of assault to murder it was improper for the court, in charging on reasonable doubt and presumption of innocence, to instruct the jury at the conclusion of his charge that if the evidence satisfied their minds beyond a reasonable doubt of the guilt of the defendant, to convict him.

Appeal from the District Court of Taylor. Tried below before the Hon. Thos. L. Blanton.

Appeal from a conviction of aggravated assault; penalty, a fine of $350.

The opinion states the case.

*Cunningham & Sewell* and *W. T. Potter* and *Hardwicke & Hardwicke,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was indicted for assaulting John Reed with the intent to murder him. Upon a trial he was convicted of an aggravated assault, and fined in the sum of three hundred and fifty dollars.

The State's testimony would indicate that appellant made an unprovoked assault on Mr. Reed, and shot at him with a pistol. The testimony offered on behalf of appellant was that Reed had drawn a pistol and was seeking to get an opportunity to shoot appellant, when appellant drew his pistol and fired. There is nothing in the testimony, from either the State or defendant, that any wordy altercation took place at the time of or on the day of the shooting. The wife of Mr. Reed had been working in the store of Comegys & Hunt for some five years, and about three years before the day of the shooting Reed and his wife had parted. For about two years before the shooting Mrs. Reed and her daughter had boarded with appellant's family, as well as worked in appellant's store. Reed testified he was standing in front of the Elite confectionery in Merkel, waiting for Mr. Robinson; defendant was in the confectionery, and when defendant saw him in front he (defendant) drew a pistol; witness began to back off, when defendant fired; witness said he had done nothing, and turned to get away, when defendant fired twice more. Defendant testified that he was in the confectionery when he saw Reed walk up in front, and saw Reed draw a pistol; that he got behind a post from Reed and attempted to draw his pistol; that Reed moved around so as to be able to see him, and he kept moving, keeping the post between them until he got his pistol out, when he jumped from behind the post and fired at Reed, and continued to shoot until Reed retreated. The State's witnesses support the statement of Reed, while the witnesses for the defendant say that Reed had a pistol and appeared to be trying to shoot defendant. The record discloses that Reed was angry about his wife quitting him, and one would judge that he, in a measure, blamed defendant with being responsible for the separation. It was in the testimony that on one occasion he had cursed defendant. Dr. Atkinson and Emmett Counts had warned defendant that Reed would likely give him trouble, and for him to be careful. Cook said he had heard Reed say that the firm of Comegys & Hunt would fire Mrs. Reed by January 1st or there would be trouble. Sheriff Weir testified that defendant had sought advice from him about Reed's conduct, and throughout the record it appears that defendant and his family were uneasy for some time prior to the shooting.

1. Under the testimony in this case, we think the court erred in that part of his charge on self-defense wherein he told the jury: "Any reasonable apprehension of death or serious bodily harm will justify a party in using all necessary force to protect his life or person, but only such force must be used as is reasonably necessary to such protection, viewed from the defendant's standpoint." There is no evidence on which to base this charge, and it curtailed defendant's right

to defend himself improperly under the facts of this case. Under the evidence defendant either made an unprovoked assault on Reed or Reed was advancing on him with a drawn pistol, seeking an opportunity to shoot. There was no question of using more force than was necessary. It was either necessary to do as he did, viewed from his standpoint, or there was no necessity to do anything. We think special charge No. 1 requested by defendant correctly presented the law as applicable to this case, and should have been given. It reads:

"You are instructed that if by reason of facts transpiring prior to the time of the alleged assault now under investigation in connection with the actions of the alleged assaulted party Reed, at the time of the alleged assault, if there were such actions, it reasonably appeared to defendant that he was in danger of being killed by said Reed, or in danger of receiving from said Reed serious bodily injury, then you are instructed that defendant would have the right to defend himself against such danger or reasonable appearance of danger, if any, even if it should develop and be shown that, in fact, the said Reed had no intention of injuring or harming the defendant. In this connection you are further charged that in passing on this question or issue you will consider the prior relations of defendant and said Reed, actions, threats and demeanor of said Reed, if any, towards the defendant prior to the alleged assault, in conection with the actions and demonstrations, if any, of the said Reed at the time and immediately prior to the alléged assault, if any.

"You are not required to find from the evidence that defendant was in fact in actual danger of being killed, or receiving from the hands of said Reed serious bodily injury, but if by reason of what had transpired prior to said time, in connection with what transpired immediately before and at the time of the alleged assault, if anything, it reasonably appeared to defendant that said Reed was about to kill the defendant or inflict on defendant serious bodily injury, defendant would have the right to defend himself against such apprehended danger, if any, and if you find that defendant, under such an apprehension of danger, fired at the said Reed, he will not be guilty of any offense, or if you have a reasonable doubt as to this, you will acquit the defendant, and in this connection you are further instructed that appearances of danger, if any, must be judged from defendant's standpoint in view of what transpired prior to the time of the alleged assault and what transpired immediately prior and at the time of .the alleged assault, if anything."

If Reed's conduct prior to the day of the shooting was such as testified to by defendant's witnesses, he would have the right to view the actions of Reed at the time of the shooting in the light of these former incidents.

2. Again, we think the court erred in permitting the State to inquire into whether or not defendant called at Mrs. Warnick's while Mr. and Mrs. Reed were boarding there two or three years prior to

the difficulty, to see Mrs. Reed. The testimony of all the witnesses, including Mr. Reed, show that Mrs. Reed is a pure woman, but if that were not so, and Reed thought it was improper for defendant to call to see his wife while sick, if Reed was on trial, these facts would be admissible as tending to show his state of mind, and basis, perhaps, for his actions. But Reed was not on trial, and such conduct would not deprive defendant of his right to defend himself if Reed was advancing on him with a pistol. Such circumstances would not tend to show the state of mind of defendant, nor could they form a basis on which to deprive him of any right in this case.

3. It was improper to permit the State to show that defendant had pleaded guilty to carrying a pistol on the occasion he shot at Reed, and to permit the State's attorney to argue to the jury that this proved that defendant did not in fact dread Reed, and say if defendant considered his life in danger it would have been a defense to carrying the pistol, and he would not have plead guilty. Defendant had testified that Weir, Wagstaff, Counts and others had warned him and told him to look out for Reed, and he had been carrying the pistol to protect himself on account of these warnings for some weeks, and if such facts are true it would have been no defense to the case against him for carrying a pistol, and it was immaterial in this case whether or not he had plead guilty to carrying the pistol. He admitted having the pistol that he shot at Reed, and based his defense solely on the ground that he thought Reed was trying to shoot him. If the court was going to permit State's counsel to put this fact in evidence, and make such argument over the objection of defendant, and not control it in his charge when requested, he should not have stopped defendant's counsel when he sought to present to the jury the law under which one would be justified in carrying a pistol, from which to argue that the fact that defendant had pleaded guilty to carrying the pistol should not be taken as evidence to disprove his testimony that he, from the warnings received, was in dread of Reed.

4. Nor do we think the court, in charging on reasonable doubt and presumption of innocence, ought to wind up such charge: "But on the other hand, gentlemen, if the evidence satisfies your mind beyond a reasonable doubt of the guilt of defendant, then you will convict him." The court had instructed the jury on the phase of the case under which they should convict him of assault to murder; on the phase of the case under which they should convict him of aggravated assault, and also instructed on the doctrine of reasonable doubt as between assault to murder and aggravated assault. By adding this clause to the charge on reasonable doubt, while the principle announced is correct in the abstract, yet it was calculated to impress the jury by being reiterated that the court believed defendant guilty. As we will reverse this case on other grounds, we make this suggestion, because judges should always be careful to so word their charges as not to give an in-

dication of their opinion in the matter, but leave the question of guilt or innocence to the jury under the law given in charge.

5. As hereinbefore stated, defendant's conduct in regard to Mrs. Reed may not have been such that met with the approval of Mr. Reed. Mr. Reed may have believed that this in fact was the cause of the separation of his wife and himself, and might mitigate, excuse or justify Mr. Reed's conduct if he was on trial, but as it would not shed any light on whether defendant was guilty of assaulting Reed, or whether he was acting in defense of an assault being made by Reed, the State should not have been permitted to ask defendant and Mrs. Reed the questions complained of in the bills of exception.

The only question in this case is, Was defendant justified in shooting at Reed, from his standpoint, viewed in the light of what he had seen and been told, or did he make an assault on Reed at a time when Reed was seeking to do him no harm?

The other matters complained of will not likely arise in another trial, as they are in a great measure passed on herein.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*