## F. S. BENNETT v. THE STATE.

### No. 3845. Decided December 1, 1915.

### Rehearing denied January 7, 1916.

**1.—Disorderly House—Permitting Liquors to be Drank Therein—Sufficiency of the Evidence.**

Where, upon trial of permitting to be drank malt liquors, towit, beer, in a disorderly house, the evidence sustained a conviction under a proper charge of the court, there was no reversible error.

**2.—Same—Date of Offense—Limitation.**

When the time is not carved out the State is not bound by the date alleged, but may prove any date prior to the presentment of the information which is within the period of limitation. Following Novy v. State, 62 Texas Crim. Rep., 492.

**3.—Same—Disorderly House—Road House—Sufficiency of the Evidence.**

Where, upon trial of permitting liquors to be drank in a disorderly house, the evidence showed that the alleged place was what is known as a road house frequented by all sorts and conditions of people, and that the general reputation of said place was one where lewd women and women of bad reputation for chastity were permitted to resort, and that the reputation of said place was bad, the conviction was sustained.

**4.—Same—Definition of Offense—Sufficiency of the Evidence.**

The mischief intended to be remedied by the statute is the permitting persons to drink liquors at places where lewd women are permitted to resort, and it is not necessary to a conviction that it be proved that such women were actually bodily present when the liquors were permitted to be drank by the persons alleged, and where defendant's knowledge that any woman of this character came to his place, etc., was submitted to the jury and there was a conflict of testimony, the conviction was sustained.

**5.—Same—Special Judge—Presumption.**

Where the minutes of the court showed the election of a special judge, and that he took the necessary oath and defendant went to trial without objection, it will be conclusively presumed on appeal on a collateral attack that the special judge was qualified to act as such.

**6.—Same—De Facto Judge—Motion for New Trial—Collateral Attack.**

Where defendant in his motion for a new trial set up for the first time that the special judge who tried him was not an attorney at law, and could not be legally elected, but his contention is in no way verified by bill of exceptions or otherwise, the matter cannot be considered; besides, if the trial judge was not a lawyer yet proceeded to try the case without objection, he became a de facto judge and his function can not be collaterally attacked. Following Ex parte Call, Jr., 2 Texas Crim. App., 497.

### 7.—Same—Husband and Wife—Argument of Counsel.

Where appellant complained that the district attorney in his argument commented on the facts that appellant's counsel objected to the wife of appellant being asked whether appellant cared whether prostitutes came out to his place or not, and it appeared from the record that she had testified that it was only when there was bad behavior that any women were asked to leave and that so long as they behaved themselves they were not bothered in appellant's place, there was no reversible error; besides, the bill of exceptions failed to show why appellant objected to the question. Following Locklin v. State, 75 S. W. Rep., 305.

### 8.—Same—Conduct of State's Counsel—Bill of Exceptions—Right of Appeal.

Where appellant complained that, after he had said several times he wanted a bill of exceptions during the trial, the State's counsel replied he could have his bill of exceptions when he appealed his case, and in no way urged the fact of appellant's right to appeal as a reason why he should be convicted, there was no reversible error.

### 9.—Same—Evidence—Leading Questions—Rule Stated—Bill of Exceptions.

It is well settled that it is permissible to ask a witness a leading question, when an omission in his testimony is evidently caused by a want of recollection which a suggestion may assist; besides, the matter was brought out by appellant himself, and the bill of exceptions is too incomplete to present anything for review.

### 10.—Same—Evidence—General Reputation—Cross-examination.

Where, upon trial of permitting liquors to be drank in a disorderly house, the State elicited on redirect examination of a witness, who had testified to the general bad reputation of the place alleged, that he signed a certain local option petition because he and others had discussed and decided that the defendant's place and two or three others were objectionable, and the only objection thereto was that the explanation of the witness was irrelevant, etc., and the defendant had asked the witness on cross-examination whether he was not one of the signers to said petition, there was no reversible error, and besides no injury was shown. Following Comegys v. State, 62 Texas Crim. Rep., 231, and other cases.

### 11.—Same—Argument of Counsel—Rule Stated.

It is well settled that before a reversal can be had on account of improper argument of State's counsel, it must clearly appear that the remarks were improper and that they were of a material character and such as under the circumstances were calculated to injuriously affect the rights of the defendant; besides, the bill of exceptions was defective. Following Walls v. State, 69 Texas Crim. Rep., 317, and other cases.

### 12.—Same—Argument of Counsel.

Where the arguments of the State's counsel were justified by the evidence, there was no reversible error.

Appeal from the County Court at Law of Harris. Tried below before the Hon. Jas. Snowball, Special Judge.

Appeal from a conviction of permitting liquors to be drunk in a disorderly house; penalty, a fine of $50 and thirty days confinement in the county jail.

The opinion states the case.

*Heidingsfelders,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—Cited case in the opinion.

HARPER, JUDGE.—No brief was filed by appellant in this cause, and, as the numerous questions presented in the record are so fairly and ably discussed in the brief filed in behalf of the State, we have adopted the brief as the opinion of the court. It is as follows:

"Appellant was convicted under the Act of February 23, 1911, which is found on page 23 of the Acts of the Thirty-second Legislature, and his punishment assessed at the lowest penalty, a fine of $50 and thirty days imprisonment in the county jail.

"It is perhaps unnecessary to quote all of said Act; but the part applicable to this case is:

" 'Sec. 1. If any person, whether the owner, . . . proprietor,. . . . or any other person shall . . . permit to be drunk,. any . . . malt liquors, whether capable of producing intoxication or not, in any . . . disorderly house . . . shall be guilty of a misdemeanor, and upon conviction such person or persons shall be punished by imprisonment in the county jail for a period of not less than thirty days nor more than ninety days, and by a fine of not less than fifty nor more than five hundred dollars.'

" 'Sec. 2. A disorderly house is . . . any . . . place where . . . lewd women or women of bad reputation for chastity are . . . permitted to resort.'

"The information alleges that in Harris County, Texas, the appellant did on the 27th day of June, 1915, permit malt liquor, towit, beer, to be drunk by Clyde Cawthon, and by Bud Dreyling, and by several other named persons, in a disorderly house there situate, and then and there under the care, control and management of the appellant, the said house being then and there a place where lewd women and women of bad reputation for chastity were then and there permitted to resort.

"No objection was made to the information, and it is sufficient to allege a violation of that phase of the statute already quoted.

"Under a very fair and full charge of the court, to which no exceptions were taken, the court submitted the allegations of the information to the jury, limiting the State's case to whether malt liquor, towit, beer,. was permitted to be drunk by Cawthon or Dreyling in the kind of disorderly house alleged, and the defensive theory was affirmatively submitted to the jury.

"1. The date of the offense was laid generally in the information and in a prosecution of this kind, when the time is not carved out, the State is not bound by the date alleged, but may prove any date prior to the presentment of the information which is within the period of limitation. Novy v. State, 62 Texas Crim. Rep., 492, 138 S. W. Rep., 139.

"The State's witnesses Cawthon and Dreyling each testified that they had bought and drunk beer at appellant's place on and before the date alleged, and there was no controversy on this phase of the offense.

"On the other phase of the offense, that is, whether the place of appellant was a disorderly house as alleged, the State's testimony is sufficient, if believed, to support the finding of the jury. A large number of witnesses testified that the general reputation of appellant's place, which was known as 'Eureka Pines,' for being a place where lewd women and women of bad reputation for chastity were permitted to resort, was bad. In addition to this, women of that kind, as shown without controversy, testified to going to the place, and witnesses also testified to seeing inmates of the reservation—the restricted district in the City of Houston, where common prostitutes live—at appellant's place, and there was testimony that such women were permitted to dance there in the enclosure around appellant's resort. The enclosure also included several small 'summer houses.' In fact, the State's evidence was sufficient to show that the place was what is known as a road house frequented by all sorts and conditions of people. One of appellant's own witnesses, Hill Hinsley, in answer to appellant's query as to the reputation of the place, testified that it was 'as good as a place of that sort could be run,' and on cross-examination testified to himself seeing a number of lewd women there.

"The mischief intended to be remedied by the statute is the permitting persons to drink strong liquors at places where lewd women are permitted to resort, and it is not necessary to a conviction that it be proven that such women were actually bodily present when the liquors were permitted to be drunk by the persons alleged.

"Appellant's theory was that he did not know that any woman of the character alleged came to his place and that when any misbehaved he made them leave. The conflict in the testimony was, of course, a matter for the jury.

"2. The case was tried before Hon. James Snowball, who, on July 16th, a month before this case was tried, was elected special judge, the regular judge being absent. The minutes of the court showing the election of Judge Snowball and the fact that he took the oath of office is shown by the record in this case, and as appellant went to trial without objection, it will be conclusively presumed on appeal on a collateral attack that the special judge was qualified to act as such. In the motion for new trial appellant sets up for the first time that the special judge was not an attorney, and, therefore, could not be legally elected, but this contention is in no way verified by bill of exceptions or otherwise, and can not be considered. If the trial judge was not a lawyer, and if it be conceded that he was not, on that account, qualified, yet the case proceeded to trial without objection, and he became a de facto judge exercising the duties of his office, and it is well settled that the right of a de facto judge to hold his office is not subject to attack in a collateral proceeding, nor will his right to hold the office be inquired into even in a habeas corpus proceeding brought to secure the release of a party convicted on a trial before him. Ex parte Call, Jr., 2 Texas Crim. App., 497. An officer de facto is a person who is such by color of election, though ineligible. Ex parte Call, Jr., supra.

"The record of the election of Judge Snowball shows that out of eighty-four votes cast by the lawyers present, among whom were appellant's counsel, he received eighty votes.

"3. Bill of exceptions No. 1 complains that the district attorney in argument to the jury commented on the fact that appellant's counsel objected to the wife of appellant being asked whether appellant cared whether prostitutes came out to his place or not. Enough is not set out in the bill to show the surrounding facts, but it appears that she had already in effect testified that it was only when there was bad behavior that any women were asked to leave and that so long as they behaved themselves they were not bothered in appellant's place. For all that appears from the bill the question was legitimate, at least the bill fails to show why appellant objected to the question, and it is well settled that the State may comment on the failure of an accused to explain criminative facts proven against him by his wife or upon any omissions in her testimony which were legitimate to be proven. Locklin v. State, 75 S. W. Rep., 305. We think, taken as a whole, the bill fails to show any reason why the judgment should be reversed, because it does not appear that any injury was or could have been caused thereby. At most the remark was but a deduction from the testimony and circumstances of the case and any intelligent jury would know what weight to give it.

"4. Bill No. 2 complains that after appellant's counsel had said two or three times, 'I want my bill,' that State's counsel said to him, 'You can have your bill when you appeal the case.' The bill shows nothing which would authorize a reversal, nor does it show that under the circumstances it was improper. Of course, State's counsel was contending that appellant was guilty and appellant's counsel was contending the reverse, and it appears from the whole of the bill that it was simply an exchange of courtesies. No intelligent jury would understand that appellant's counsel would want bills if he did not lose the case. State's counsel in no way urged the fact of appellant's right to appeal as a reason why he should be convicted.

"5. The third bill complains that the State was permitted to ask the sheriff, 'Did Mr. Godbolt and W. J. Hill complain to you of the place?' The bill is too incomplete to present anything for review, but we gather therefrom that the sheriff was asked by the appellant to give the names of any persons who complained about the place, and in answer to appellant's question stated that he did not remember. The State then was properly allowed to suggest to the sheriff the names. It is well settled that it is permissible to ask a witness a leading question when an omission in his testimony is evidently caused by a want of recollection which a suggestion may assist. Branch's Crim. Law, sec. 334. This matter was brought out by appellant himself, as shown by the bill, and presents no error. The only objection made was that the testimony was 'irrelevant, immaterial and incompetent hearsay.' If the statement of facts is looked to, it will be seen that the sheriff had testified that the general reputation of appellant's place in the

respects allegea was bad, and general reputation is, of course, based on hearsay.

"6.   The fourth bill relates to the admissibility of certain testimony elicited by the State on redirect examination of the witness Godbolt, who had testified on direct examination that the general reputation of the place of appellant in the respects alleged was bad.   On cross-examination this witness was asked by appellant if it was not a fact that the witness was not one of the signers of the local option petition which was circulated in the vicinity where appellant's place of business was, to which the witness answers in the affirmative and on redirect examination the court, over objection of appellant, permitted the State to ask the witness why he signed the petition inquired about, and the witness answered, 'Well, me and a lot of the residents out there got together and discussed it and decided that the defendant's place and two or three others out there were objectionable, and we signed the petition for local option and had an election.'   The only objection made was that the explanation of the witness 'was irrelevant, immaterial and inadmissible for any purpose, and would be highly prejudicial.'   This objection is so general as to be equivalent to no objection unless the testimony was obviously not admissible for any purpose. We think, however, that the testimony was clearly admissible under the authority of Comegys v. State, 62 Texas Crim. Rep., 231, 156 S. W. Rep., 642, wherein a similar question was decided.   The only legitimate purpose in asking the witness if he was not one of the signers to the local option petition would be to show the animus or leaning of the witness, and if this was the purpose, then clearly the State would have the right on redirect examination to remove the inference sought to be made by appellant and to show why the witness acted as he did.

"However, no possible injury is shown by the answer because the witness did not state the result of the election or state any fact which could possibly have wrongfully injured appellant's rights, because he had already testified to the bad general reputation of appellant's place, and the reason he gave for signing the local option petition is the reason that would actuate any honorable man in signing such a petition; certainly if the witness thought appellant's road house and the others out there were unobjectionable he would not have signed the petition.   In effect, the explanation of the witness was to show the jury that he did not sign the petition for any personal animosity to appellant, and the State was properly permitted to have the witness put himself right before the jury.   Comegys v. State, 62 Texas Crim. Rep., 231, 156 S. W. Rep., 642; Manley v. State, 69 Texas Crim. Rep. 169, 153 S. W. Rep., 1138.   We think it unnecessary to cite any other authorities.

"7.   The next bill of exceptions complains that the State's counsel in the closing argument to the jury said, 'There are more good young women gone to hell through road houses than any way that I know of,' but the bill of exceptions does not state any ground of exception thereto,

nor does the bill of exceptions show the setting of the argument or in what connection it was said. It is impossible that any honest jury could have been influenced to find appellant guilty on such argument or that any jury would have not known just what weight to attach thereto, and as appellant received the lowest penalty on a plain case of guilt, no injury is shown even if it be conceded that the remark was improper. It is well settled that before a reversal can be had on account of the improper or supposed improper argument of State's counsel, it must clearly appear that the remarks were improper and that they were of a material character and such as under the circumstances were calculated to injuriously affect the rights of the accused. Walls v. State, 69 Texas Crim. Rep., 317, 153 S. W. Rep., 130; Davis v. State, 69 Texas Crim. Rep., 420, 154 S. W. Rep., 550; Himmelfarb v. State, 174 S. W. Rep., 586; Mooney v. State, 76 Texas Crim. Rep.. 539, 176 S. W. Rep., 52. The bill of exceptions is so incomplete as really not to present any question for review, but in any event no such error is shown which would authorize this court to set aside the judgment in this case.

"8. The only other bill complains of the argument of the assistant district attorney to the effect that the 'Defendant's place is such a place where some man may take a good girl out there, where the people of that kind and character frequent,' and nothing in the bill of exceptions shows that this statement was not justified by the facts in evidence, but if the statement of facts is looked to it is seen that this statement is amply justified by the testimony in the case, and the other part of the bill is the incompleted part of the bill, No. 2, which has already been discussed in paragraph 4 hereof. The statement of facts shows that this road house was a place where many good people at times frequented."

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 7, 1916.—Reporter.]