[No. 2805.    June 23, 1924.]

STATE v. SNYDER.

SYLLABUS BY THE COURT.

1. Two separate counts in an information, each charging the unlawful sale of intoxicating liquor to the same person on the same day, do not necessarily charge the same offense, as such offenses are not continuous in their nature,

and both could be committed on the same day, and each be punishable as a separate offense.

2. The proof in a criminal case need not conform to the exact date laid in the information or indictment, it being sufficient to prove the commission of the offense at any time prior to the filing of the information or the return of the indictment and within the limitation period.

3. The intoxicating character of liquor need not be established by a chemical analysis, but may be proven by testimony of persons who have had experience in tasting and drinking it and who know its effect.

4. A motion to strike testimony which has been received without objection is addressed to the discretion of the trial court, and is not reviewable upon appeal, except to determine whether such discretion has been abused.

5. Testimony of a witness that at the time he committed two burglaries he was intoxicated upon liquor purchased from the defendant is admissible to establish a general charge of keeping intoxicating liquor for sale.

6. Evidence of other sales of intoxicating liquor than those specifically charged in the information is relevant to establish a general charge of the unlawful possession of such liquor for the purpose of sale, and should not be considered by the jury as bearing upon the specific sales charged, and it is error to refuse such an instruction, as the defendant is entitled to have the purpose of such evidence explained, and the jury directed to consider it for such purpose only.

7. Where a penal statute contains an exception which is so incorporated or interwoven in the language defining such offense as to become a constituent or necessary part of the offense, and so essentially descriptive of it that its ingredients cannot be accurately and clearly defined if the exception is omitted, it is necessary that an indictment or information drawn thereunder negative such exception.

8. If the language defining such offense is so separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without reference to the exception, an indictment or information need not negative such exception.

9. The exception contained in section 1, c. 151, Laws 1919, is not a necessary or constituent part of the offense therein defined, nor necessarily descriptive thereof, and therefore need not be negatived in an indictment or information drawn threunder.

10. The term ''offense'' as used in section 4, c, 151, Laws 1919, means an offense which has been legally ascertained and adjudicated to be so by a court of competent jurisdiction, that is, by conviction, and until a person has been once convicted under the statute there can be no subsequent offense thereunder.

Appeal from District Court, Colfax County; Leib, Judge.

C. W. Snyder was convicted of violating the prohibition law, and he appeals. Reversed and remanded, with directions.

H. A. Kiker, of Raton, for appellant.

M. J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty. Gen., for the state.

### OPINION OF THE COURT.

BRATTON, J. The district attorney of the Eighth judicial district filed an information in this cause, charging the appellant with six separate violations of chapter 151, Laws 1919, known as the Prohibition Law; the first five counts charging him with the unlawful sale of intoxicating liquor, and the sixth charging him with the unlawful possession of the same for the purpose of sale. The third and fifth counts were dismissed, and appellant was convicted upon the remaining ones. From the sentence imposed he has perfected this appeal.

[1, 2] 1. It is argued that counts numbered 1 and 2 charge but one offense, as the language used is identical; both charging the sale of intoxicating liquor to C. T. Lobb on April 4, 1922. A review of the record fails to show that any such contention was made in the trial court, or any such question presented there. On the contrary, appellant contended, in a motion to quash the information and in a motion to require the state to elect upon which count it would prosecute, that the first count charged a misdemeanor, and that each of the others charged a felony; they being separate and subsequent offenses. This question must have been presented to the trial court in order to be reviewable here. The contention is not sustainable for the further reason that, while an indictment or information must charge the time the offense was committed, the proof need not be confined to that exact time, except in those cases where time is an ingredient or the essence of the offense, such as

burglary in the nighttime, or the violation of a Sunday law. Aside from these exceptions, if the proof shows a violation to have occurred at any time prior to the filing of the information or the return of the indictment, and within the statute' of limitation covering the offense charged, it is sufficient and need not conform to 'the date laid in the pleading. 1 Bishop Cr. Proc. p. 246; 14 R. C. L. p. 180; State v. Fellers, 140 Mo. App. 723, 127 S. W. 95; State v. G. S., 1 Tyler (Vt.) 295, 4 Am. Dec. 724; Miller v. State, 33 Miss. 356, 69 Am. Dec. 351; Bennett v. State, 78 Tex. Cr. R. 231, 181 S. W. 197; State v. Freeman, 162 N. C. 594, 77 S. E. 780, 45 L. R. A. (N. S.) 977; State v. Dufour, 123 Minn. 451, 143 N. W. 1126, 49 L. R. A. (N. S.) 792, and the notes appended thereto.

The offenses charged in these two counts not being continuous in their nature, the appellant could be convicted upon each of them, where there is proof that separate sales were made, even though on the same day. The fact that the same date is laid in each of the counts is immaterial, where they are sustained by proof showing separate sales within the period of limitation, even though neither occurred on that day, or one then and the other on a different day or both on that day. State v. Freeman, supra. We have here an information charging three separate sales of intoxicating liquor made to Lobb, and the proof fully establishes three separate sales made to him, all prior to the filing of the information and within the limitation period. This is sufficient, and meets all the requirements of the law.

[3] 2. The sufficiency of the evidence to establish the intoxicating character of the liquor sold is seriously challenged, and this is the next question before us. The prosecuting witness, Lobb, testified that, prior to the time he purchased the liquor in question, he had 10 years' experience in tasting and drinking intoxicating liquors; that he had drunk corn whisky, and knew what it was, and was familiar with its effect; that when he went into appellant's place of business he talked for a while with a stranger and then called

for a drink; that appellant looked at the stranger, who nodded his head to appellant, and that thereupon appellant served Lobb and the stranger, who became Lobb's guest in taking a social drink; that appellant kept the liquor in a bottle in his hip pocket, and served it by pouring it from the bottle into small whisky glasses, selling at 50 cents per drink; and that on one of the three occasions in question Lobb called for white whisky. Based upon this qualification, the witness testified that the liquor he bought from appellant was corn whisky and that it had an intoxicating effect upon him. Other evidence of an incriminating character was given by witnesses who testified they smelled Lobb's breath just before he went into appellant's place of business on one of these occasions, as well as just after he came out; that they could not detect the odor of liquor before he went in, but could upon his coming out. The proof, as a whole, is sufficient to establish that the liquor was intoxicating. It is the well-established rule, declared by the overwhelming weight of modern authority, that a chemical analysis is not necessary to prove that a certain liquor is intoxicating, but that it may be established by persons possessing experience in drinking it and who know its effect. A chemical analysis would doubtless be more reliable, and perhaps entitled to greater weight; but it is not necessary, and is not the only way of proving the required fact. Neither is it necessary for such a witness to be able to give the chemical contents of liquor, any more than it would be required of one testifying with reference to salt or sugar. Clearly the experience of this witness was sufficient to make his testimony admissible, and, if believed by the jury, would support a conviction. In Carson v. State, 69 Ala. 235, the following language, which was quoted with approval in the recent Texas case of Cathey v. State. 94 Tex. Cr. R. 599, 252 S. W. 534, was used:

"It was competent for the witness (Yarborough) to testify to his opinion as to the intoxicating properties of the bitters proved to have been sold by the defendant. This is a matter of common knowledge, where a witness is shown to have had an opportunity of personal observation, or of experience, such as to enable him to form a correct opin-

ion. It is not required that he should be a technical expert."

The Supreme Court of Georgia, in. Wilcox v. State, 8 Ga. App. 536, 69 S. E. 1086, thus expressed its views upon this question:

"The plaintiff in error was convicted of selling intoxicating liquor. According to the state's evidence he was selling beer; also whisky. One of the main questions at issue in the trial court was as to whether the beer was intoxicating. A witness, who bought and drank some of the beer, testified that he did not know whether it was lager beer or not, and that he did not drink enough of it for it to make him drunk; but it produced a dizziness and a funny feeling, and he was of the opinion that, if a person should drink enough of it, he would become drunk. He also expressed what amounted to an .opinion that it was lager beer. Another witness, who had drunk some of the same beer, said it tasted like lager beer . and his opinion as to its intoxicating qualities tallied in the main with that of the other witness. The accused moved to exclude the evidence of these . witnesses as to the intoxicating quality of the beer, on the ground that it was opinion evidence and that the witnesses did not qualify as experts. The opinion of the witness was admissible. Each stated the facts on which his opinion was based; and the testimony disclosed a sufficient familiarity as to the facts involved to authorize the expression of an opinion. One who has drunk a considerable quantity of a liquor does not have to be an expert in order to form a reasonably trustworthy opinion as to whether it is intoxicating or not. There is something presageful about a drink of intoxicating liquor, even though it be too small to produce full intoxication. The less expert the taker of the drink is in the matter of drinking, the more accurate his opinion is likely to be."

The question came before the Supreme Court of Michigan in People v. Berridge, 212 Mich. 576, 180 N. W. 381, where this was said:

"The place of business of defendents had been searched under a search warrant, and numerous containers with their liquid contents had been taken. These containers were produced in court, identified by the police officer, and. were marked as exhibits. This witness, testified that he knew the taste of whisky. * * * From several of the other containers liquids were poured and given to witness to taste on the stand, and he testified that each was intoxicating liquor and what it was. During this proceeding and after some of it had taken place defendants' counsel objected to this manner of procedure. It is here urged that this course was itself a violation of the law, that an analysis of the contents should have been made by a chemist and that the proceedings had in the instant case would tend to bring the

law into disrespect, especially by the unthinking. Defendants' counsel is undoudtedly correct in insisting that the more orderly way of establishing the character of the contents would be by showing a chemical analysis, but the witness had qualified himself to speak on the subject and his testimony was not inadmissible."

The law in Missouri upon this question has been declared in the quite recent case of State v. Brownfield et al. (Mo. App.) 256 S. W. 143. We quote therefrom:

"It is charged, also, that the trial court erred in allowing Chief of Police Rector and Policeman Quint to testify that the property seized was intoxicating liquor, or whisky. The record shows that both these witnesses testified they were acquainted with intoxicating liquor and could identify it as such, and that the liquor they seized from defendants was intoxicating whisky. The law does not go so far as to require the testimony of experts, or analysts, in the identification of intoxicating liquor."

And the views of the Supreme Court of Colorado are reflected in Enyart v. People, 70 Colo. 362, 201 Pac. 564, wherein it was said:

"A witness was permitted to testify that he had smelled and tasted the liquor which the accused sold, and that it was whisky. It is objected that such evidence was improper. It was proper. It is objected that the witness was not shown to be qualified to judge. Such testimony is not expert testimony any more than that of one who has tasted salt or sugar, and testifies to what it is. Of his qualifications the trial court must decide."

See, also, Gurski v. State, 93 Tex. Cr. R. 612, 243 S. W. 353; Farley v. State, 94 Tex. Cr. R. 106, 249 S. W. 491; Latson v. State (Tex. Cr. App.) 254 S. W. 982.

The record in this case, containing evidence that the liquor in question was intoxicating obviates the necessity of passing upon whether or not courts will take judicial notice that corn whisky is intoxicating. It has been recently held by the Supreme Court of Oregon that "moonshine" whisky, which is doubtless the same as "corn" whisky, is intoxicating, and that courts will take judicial notice of that fact. State v. Edwards, 106 Or. 58, 210 Pac. 1079.

[4] 3. A witness for the state testified upon his

direct examination that he had been directed to the ap-
pellant's place of business as a place where he could
get a drink. A motion to strike the testimony was
denied. This is now assigned as error. Much as we
may regret it, we cannot review the question, because
no objection was made until after the witness had an-
swered. Under such circumstances, a motion to strike
is addressed to the discretion of the trial court. In
State v. Lazarovich, 27 N. M. 282, 200 Pac. 422, this
court said:

"It is contended by counsel for appellant that it was
error to admit the testimony of the sheriff that he served
a subpoena upon Mike Pabor. But the proposition is not
properly before the court, because the testimony was ad-
duced without objection having been made in apt time.
After its introduction, counsel for appellant moved that it
be stricken. Under such circumstances, it was a matter for
the exercise of the discretion of the trial court as to wheth-
er the testimony should be stricken."

To the same effect are State v. Kidd, 24 N. M. 572,
175 Pac. 772; State v. Alford, 26 N. M. 1, 187 Pac.
720; and State v. Anaya, 28 N. M. 283, 210 Pac. 567.

The record fails to show any abuse of this discretion.
Of course, if a witness answers before counsel has time
to object, then inadmissible testimony should be strick-
en upon a proper motion made immediately thereafter.
This record fails to show that counsel did not have
ample time to interpose an objection before the answer
was made. Under the established law, the question is
not reviewable.

[5] 4. During the cross-examination of James Mc-
Lane, a witness for the state, it was developed that he
had recently pleaded guilty to two charges of burglary
and was then confined in jail on that account. Upon
redirect examination the witness testified that at the
time he committed those offenses he was under the in-
fluence of liquor that he had purchased from the ap-
pellant. It is argued that this testimony tended to
prejudice appellant before the jury by creating the
impression that the witness was then suffering punish-
ment for crimes committed while intoxicated upon

liquor purchased from appellant. The testimony was clearly admissible and relevant, not to establish a detail in connection with the burglaries, either in mitigation of the offenses on the part of the witness or to involve the appellant, but to establish an entirely different and independent fact, namely, that the witness was intoxicated upon liquor purchased from the appellant, which was clearly admissible under the sixth count of the information, charging the unlawful possession of liquor for the purpose of sale.

[**6**] 5. Appellant requested the court to give to the jury the following instruction, which was refused, to which action a proper exception was seasonably taken.

"You are instructed that proof of sales of intoxicating liquor containing alcohol to any persons other than C. T. Lobb and W. R. Walkup, by defendant, is no proof of the guilt of the defendant of unlawfully selling intoxicating liquor containing alcohol; and such testimony is only material, and can be considered by you only for the purpose of determining whether or not the defendant unlawfully kept liquor for sale as charged in count 6 of the information."

In this we think the court fell into error. The state introduced evidence tending to show a number of sales of liquor to James McLane and others. The information contained no charge of unlawful sales to these persons, and the evidence was clearly intended to prove guilt under the sixth count, which charged the unlawful possession for the purpose of sale, but the court nowhere explained to the jury what purpose this evidence served, nor for what purpose it might be considered. Appellant was entitled to have the law applicable to the consideration of such evidence explained, so that the jury might know wherein it was relevant, and for what they might consider it. We are not unmindful of the fact that the instruction is not, strictly speaking, correct, because it authorizes the jury to consider the evidence of sales made to W. R. Walkup in passing upon the counts charging specific sales made to C. T. Lobb. In this it was less favorable to appellant than he was entitled to, as he had the legal

right to have this evidence also limited to a considera-
tion of the sixth count, as it could serve no other pur-
pose after the counts charging sales made to Walkup
were dismissed. Thereafter such evidence was relevant
upon a consideration of that count, but for no other
purpose. So obviously the instruction was less favor-
able to appellant than he was entitled to.

In State v. Nield, 4 Kan. App. 626, 45 Pac. 623, the
information contained five counts, the first four charg-
ing the defendant with illegal sales of intoxicating
liquor on certain named dates, while the fifth charged
him with maintaining a nuisance, by keeping a cer-
tain place where intoxicating liquors were kept for sale
and sold in violation of the laws. The defendant there
requested the court to instruct the jury that the evi-
dence concerning various sales other than those spe-
cifically charged in the information could not be con-
sidered in determining his guilt or innocence upon the
charges of particular sales. The requested instruc-
tion was refused, and the appellate court reversed the
case on that account, and in doing so said:

"Upon the trial of the case upon its merits, the testi-
mony of numerous witnesses was admitted, tending to show
various unlawful sales of intoxicating liquors other than
those upon which the state, by direction of the court, elect-
ed to rely for conviction. The defendant requested the
court to instruct the jury not to take into consideration the
evidence as to such other sales, in determining the guilt or
innocence of the defendant as to the particular sales upon
which the state elected to rely. This the court refused, and
nothing upon the subject was given in the general instruc-
tions. In this we think the court erred. While it is proper,
in the first place, for the state to introduce evidence con-
cerning any unlawful sales made by the defendant, yet,
when an election has been made of a particular transaction
upon which the state relies for conviction, the evidence as
to other illegal sales is practically eliminated from the case.
It cannot be used or referred to merely for the purpose
of bolstering up and strengthening the case made by the
state upon the elected transaction, and the defendant is
entitled to have the jury so instructed. There are cases
in which the evidence as to other transactions is admissible
for certain purposes, as in State v. Coulter, 40 Kan. 87, 19
Pac. 368, and State v. Marshall (recently decided by this
court) 44 Pac. 49, in which it was held that the evidence
as to other sales might be considered for the purpose of
showing that the liquor sold by the defendant was intoxi-

cating. But even then such evidence should be limited to that special purpose. Under the facts of this case, we think the instruction asked should have been given."

The tendered instruction there went no further than to forbid the jury to consider the evidence establishing other unlawful sales than those charged in the information in passing upon the guilt or innocence of the defendant upon the specifically charged sales. The instruction here so advised the jury and went beyond that by affirmatively informing them upon what branch of the case it could be considered. The appellant was entitled to have the jury so instructed and the court erred in refusing it.

[7, 9] 6. The sufficiency of the sixth count of the information is challenged because it fails to negative the exception contained in section 1, chapter 151, Laws of 1919; that being the penal act under which it is drawn. The statute in question provides:

"It shall be unlawful for any person, association or corporation within this state to manufacture for sale, barter or gift any ardent spirits, ale, beer, alcohol, wine, or liquor of any kind whatsoever containing alcohol, or for any person, association, or corporation to import into this state any such liquors or beverages for sale, barter or gift, or to sell or barter, or keep for sale or barter any of such liquors or beverages, or offfer any such liquors or beverages for sale, barter or trade; provided, nothing in this section shall be held to apply to denatured or wood alcohol or grain alcohol when intended and used for medicinal, mechanical or scientific purposes only, or to wine, when intended and used for sacramental purposes only."

Perhaps few questions can be suggested upon which more has been said by jurists having occasion to deal with them. A citation or discussion of all the cases dealing with various phases of this question would unduly lengthen this opinion. We shall cite only a limited number of them. No doubt there is, in legal contemplation, a technical distinction between an exception and a proviso, in the sense we are now discussing them, but they are usually used interchangeably and without any separate distinctive signification. U. S. v. Cook, 84 U. S. (17 Wall.) 168, 21 L. Ed. 538; State v. Rosasco, 103 Or. 343, 205 Pac. 290. With

this understanding, we shall approach a consideration of the contention made. In doing so, there are two rules equally well and firmly established by the courts and text-writers. The first is that, where a statute defining and denouncing an offense contains an exception which is so incorporated or interwoven in the language defining such offense as to become a constituent or necessary part of the offense, and so essentially descriptive of it that its ingredients cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment or information drawn thereunder must negative the existence of the exception. The second rule is that, if the language defining the offense is so separable from the exception that the ingredients constituting the offense may be accurately and clearly defined and described without reference to the exception, the indictment or information need not negative the exception. Or, to otherwise express it, where the exception or proviso is not made a constituent or necessary part or ingredient of the offense itself, and is not necessarily descriptive of it, it may be omitted from a criminal pleading drawn thereunder. In such an instance, it becomes a matter of defense for the accused to show that he falls within the terms of the exception.

The second rule controls here. The exception is in no proper sense either a constituent or necessary part of the offense, nor descriptive of it, but instead merely declares certain exemptions from the operation of the statute. The offense denounced by the law is manufacturing, importing, or keeping certain described liquors for sale, barter, or gift, as well as selling or bartering them. The provisions of the exception are no part whatever of the description of such an offense, nor a constituent part or ingredient thereof, but simply limit the operation of the statute by declaring that it shall not apply in certain instances. It was therefore unnecessary for the information to negative the exception. 2 Woollen & Thornton, Intoxicating Liquors, § 880; Joyce, Intoxicating Liquors, § 663; 1 Wharton, Cr. Proc. § 288; 31 C. J. p. 720; 14 R. C. L. p. 188; U. S. v. Cook, supra; State v. Rosasco, supra; State

v. Tamler, 19 Or. 528, 25 Pac. 71, 9 L. R. A. 853;
State v. Roy, 152 La. 933, 94 South. 703; State v.
Nordstrom, 146 Minn. 136, 178 N. W. 164; State v.
Turner, 118 S. C. 383, 110 S. E. 525; State v. Hicks,
179 N. C. 733, 102 S. E. 388; Lowrey v. State, 79 Tex.
Cr. R. 382, 185 S. W. 7; Smythe v. State, 2 Okl. Cr.
286, 101 Pac. 611, 139 Am. St. Rep. 918; Smith v.
People, 51 Colo. 270, 117 Pac. 613, 36 L. R. A. (N.S.)
158; State v. Snodgrass, 96 Kan. 604, 152 Pac. 624;
State v. Wood, 53 Mont. 566, 165 Pac. 592; State v.
Hopkins, 54 Mont. 52, 166 Pac. 304, Ann. Cas. 1918D,
956; People v. Spagnoli, 58 Cal. App. 154, 208 Pac.
185; People v. Cencevich (Cal. App.) 220 Pac. 448.

[**10**]  7.  It is lastly urged that the court erred in
denying appellant's contention, repeatedly made dur-
ing various stages of the proceedings, that he could not
be prosecuted upon an information for but one of-
fense, because, by the terms of the statute, all subse-
quent offenses are made felonies, and that a prosecu-
tion therefor could be maintained by indictment only.
The statute (section 4, chapter 151, Laws 1919) pro-
vides:

"Any person voilating any of the provisions of the pre-
ceding sections shall, for the first offense be imprisoned
in the county jail for a period of not less than ninety
days nor more than six months, and for the second and
any subsequent offense shall be imprisoned in the state
penitentiary for not less than two nor more than five
years, and the district court, or the judge thereof, shall
have no power to suspend the imposition or execution of
any sentence required by this act to be imposed for viola-
tion hereof.

"Upon any conviction for a violation of the provisions of
this act, it is hereby made the duty of the prosecuting of-
ficer of the state, prosecuting the said cause, to file with
the trial judge a sworn affidavit in writing in the manner
provided by law, praying for the immediate issuing of a
search warrant, to the end that any liquors had or held
by the defendant may be discovered and subjected to the
provisions of this law; and it shall thereupon be the duty
of the trial judge to forthwith issue such search warrant,
addressed to the proper officer, commanding him to forth-
with proceed and search the permises named and described
in said warrant and to seize any liquors that may there be
found and to bring and produce the same before the court,
and such liquors so seized and produced before the court

shall be subject to such disposition as the court may direct."

If one count in the information charged a misdemeanor, and all the others charged felonies, the position would be sound, because it is expressly provided in section 14 of article 2 of the Constitution that all felonies must be prosecuted by indictment, unless that right is expressly waived. The fallacy of the argument, however, lies in an erroneous interpretation of the term 'offense'' as used in the statute. The use of the word as there made means an offense which has been legally ascertained and adjudicated to be so by a court of competent jurisdiction; that is to say, by conviction in such a court. In the case of In re Buddington, 29 Mich. 472, the same conclusion was reached. We quote the following therefrom:

"The objection that the mittimus does not show that the offense charged was one authorizing the sentence, for the reason that it does not fairly import that the prisoner had been twice before convicted of a similar offense, is not well taken. The word 'offense' and the expression 'third offense' are so used in the statute in different connections as to signify that what is intended is an 'offense' or the 'third offense' which has been legally ascertained and determined, in which sense the term 'third offense' is equivalent in meaning to the term third conviction for a similar offense; and the justice cannot be required to be any more technically accurate in the use of terms than the statute itself."

A similar question arose in Carey v. State, 70 Ohio St. 121, 70 N. E. 955, wherein the Supreme Court of Ohio said:

"4. **The Demand for a Jury.** This demand was made upon the claim that, as there were three counts in the affidavit, there were three separate offenses charged, and, inasmuch as a party on conviction of a third offense may be imprisoned as part of the sentence, he would be entitled to be tried by a jury. This claim rests upon a misconception of the statute. The term 'offense' in the statute embraces the entire charge, though there may be a number of counts. The provision as to punishment is that the convicted party shall 'be fined not more than two hundred dollars nor less than fifty dollars for the first offense, and shall for a second offense be fined not more than five hundred dollars nor less than one hundred dollars, and

for any subsequent offense be fined not less than two hundred dollars and be imprisoned not more than sixty days and not less than ten days.' The manifest purpose is to increase the penalty for offenses after the first because the party has persisted in violating the law. With this purpose in mind, it seems clear that the term 'second offense' means second conviction. Hence, as this was the first trial for the violation of the law, there could be no imprisonment as part of the sentence, and the party was not, therefore, entitled to a jury."

And a somewhat kindred question was involved in People v. Bergman, 176 App. Div. 319, 162 N. Y. Supp. 443, wherein the following language was used: "The verdict upon the two counts was simultaneous. The mere fact that the sentence with respect to the first count was pronounced in a breath before that relating to the second count did not make the defendant a second offender at the time of the sentence upon the latter count."

Having determined that the word "offense," as used, means conviction, it becomes obvious that the contention is not well founded, because the appellant had not been previously convicted under the terms of the statute, and it is only in the event of a second or subsequent conviction thereunder that such offense becomes a felony.

Some other questions are discussed in the briefs, but they present no reversible error. For the reasons stated, the judgment is reversed, and the cause remanded, with directions to award a new trial; and

It is so ordered.

PARKER, C. J., and BOTTS, J., concur.