MRS. L. DANSBY V. THE STATE.

No. 19378.   Delivered February 23, 1938.

The opinion states the case.

*Gray Browne,* of Abilene, and *Walter S. Pope, Jr.,* of Anson, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of murder with malice aforethought and her punishment was assessed at confinement in the State Penitentiary for life.

By bill of exception number one, appellant complains of the action of the trial court in declining to sustain her motion for an instruction to the jury to return a verdict of not guilty. She contends that she was entitled to such an instruction upon three grounds: (1) Because the evidence fails to show that she mingled or caused to be mingled strychnine with lemonade as charged in the first count of the indictment; (2) because the evidence fails to show that appellant caused Mrs. King to swal-

low any substance injurious to health and the functions of the body as charged in the second count, and (3) because independent of appellant's extrajudicial confession, there is no evidence which established the *corpus delicti*. Wherefore she claims that the evidence is insufficient to support and sustain either of the counts in the indictment.

We can not agree with her. The testimony shows that appellant was living in a tenant house of Mrs. King's; that on the 9th day of March, 1937, she went to the home of Mrs. King, located just across the street from appellant, and told Mrs. King that she was badly in need of $380 to pay for an operation on her daughter's nose. Mrs. King gave her a check in said amount which she took to the bank at Anson and cashed. She placed $60 in her own account, and with $320 purchased an automobile. Nine days later, under the pretense of obtaining a receipt for rent paid, she obtained Mrs. King's signature to a blank check which she filled out in the sum of $250. A few days later she did the same act and again obtained $250. Prior to the commission of the alleged offense, appellant in talking to Mrs. Rogers, asked her if she thought that Sam (Mrs. King's brother) would examine Mrs. King's bank account and if she knew how they kept the books at the bank.

On the morning of the day in question, Mrs. King rode to Stamford with appellant in her car, where appellant purchased one-eighth of an ounce of strychnine from R. W. Cochran at the City Drug Store, under the assumed name of E. G. Bethany, giving her address as Peacock, Texas. After she had obtained the poison, they returned to their respective homes. A short time afterwards, Mrs. King's daughter came to visit her and soon thereafter, Mrs. King became violently ill, had intermittent convulsions and died. A chemical analysis of the gauze used by the doctor in wiping the lips of the deceased after she had vomited, as well as a chemical analysis of her stomach, revealed a quantity of strychnine. The attending physician testified that Mrs. King's death was due to strychnine poisoning.

Appellant's motive for the commission of the alleged offense, as disclosed by the record, was the desire to remove Mrs. King as a possible witness against her in case of an investigation of Mrs. King's bank account, which might involve her in a prosecution. What was the purpose of the appellant in giving an assumed name and a wrong address to the druggist from whom she purchased the poison? No doubt, it was to mislead anyone who might undertake an investigation of the cause of Mrs. King's death. Soon after Mrs. King had obtained the lemon from the appellant, she became ill and the symptoms produced by her

illness indicated that she had been poisoned. Appellant admitted buying the poison at Stamford and in her confession stated that Mrs. King came to her home shortly after noon to borrow one-half of a lemon to make a glass of lemonade. Appellant cut a lemon, smeared it with strychnine on one-half and gave it to deceased, who took it home and made lemonade with it. Soon thereafter, appellant went to deceased's home and observed that she had drunk only a portion of a glass of the lemonade; appellant then threw what remained, away.

We do not deem it necessary to sum up the facts to demonstrate the sufficiency of the evidence to sustain the allegations of the indictment. A concise statement of the evidence, as hereinabove set out, is deemed sufficient to convince an unbiased mind of the sufficiency thereof and to sustain the jury's findings. It appears to us that the result was clearly contemplated by appellant when she smeared the strychnine on the lemon, knowing that deceased wanted some lemonade and would drink the same. Therefore, she caused the deceased to drink the poison.

Bills of exception numbers two and three complain of the admission of testimony of Dr. J. H. Arnette, Chief Chemist of the State Health Laboratory, as to what he described as a result of a chemical analysis of the gauze and the stomach of the deceased. Such testimony, we believe, was clearly admissible to show the cause of deceased's death.

Bill of exception number four recites that the district attorney, in his closing argument, said: "As a matter of fact, the State did search the house of Mrs. J. T. King and did not find any strychnine in the house of the deceased."

Appellant objected on the ground that there was no evidence as a basis for the argument and that same was highly prejudicial to her. The court promptly sustained the objection and instructed the jury not to consider it. The court further qualified said bill of exception and states that appellant's counsel, who preceded State's counsel in the closing argument, said "Why did not the officers search the home of Mrs. King for strychnine so they could tell you whether there was any in her house or not."

It appears that the argument complained of was in reply to an argument by counsel for the defendant, and upon objection, the court sustained the same and instructed the jury not to consider it. Under such a state of facts, we do not think any reversible error is shown. Furthermore, a conviction will not be set aside because of alleged improper argument, unless it appears that the remarks were of a material character and were calculated to injuriously affect appellant's rights. See House v.

State, 19 Texas Crim. Rep. 227; Pierson v. State, 18 Texas Crim. Rep. 524; Hardy v. State, 31 Texas Crim. Rep. 289; Johnson v. State, 59 Texas Crim. Rep. 11; Hickey v. State, 62 Texas Crim. Rep. 568; Mooney v. State, 76 Texas Crim. Rep. 539; Bennett v. State, 78 Texas Crim. Rep. 231.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.